**Larry BIEHL, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

No. 16A01–0001–CR–4.

Court of Appeals of Indiana.

Nov. 21, 2000.

Susan K. Carpenter, Public Defender of Indiana, Cynthia Maricle Russell, Deputy Public Defender, Indianapolis, Indiana, Attorneys for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

**OPINION**

MATHIAS, Judge

Larry Biehl was found guilty but mentally ill of voluntary manslaughter, a Class A felony and criminal recklessness, a Class

C felony. The trial court found three mitigating circumstances (Biehl's mental illness, his lack of criminal history, and his remorse) and no aggravating circumstances, but nevertheless imposed presumptive, concurrent sentences of thirty and four years, respectively. In light of Biehl's severe, longstanding mental illness, lack of any criminal history, and the absence of any aggravating circumstances, we find the presumptive sentence manifestly unreasonable and remand with instructions to impose the minimum sentence of twenty years.

### Facts and Procedural History

After a morning of glue-sniffing, four teenage boys decided to visit thirty-five-year-old Larry Biehl, who was living in a nearby abandoned barn. According · to Biehl, the boys threatened him and threw bricks and boards at him. Biehl asked them to leave, but they refused. Biehl left, but returned with a gun. He shot at the boys, killing one and injuring another.

Biehl was charged with murder and attempted murder. The trial court appointed three doctors to evaluate his competency to stand trial. Biehl told the doctors that the CIA controlled his life through electronic surveillance and satellite technology. Biehl explained that he heard strange tones from this surveillance. All three doctors diagnosed Biehl as suffering from paranoid schizophrenia. As one doctor explained, Biehl's "delusional thinking is chronic and pervasive," having influenced Biehl's life for "at least the last ten to fifteen years." R. at 135. All three doctors opined that Biehl was incompetent to stand trial. The trial court agreed, and

Biehl was sent to Logansport State Hospital.

After three months of treatment and medication, Biehl attained the ability to understand the proceedings and assist in the preparation of his defense and was thus returned to the Decatur County Jail. He then filed a notice of his intent to pursue an insanity defense and was again examined by three doctors, who subsequently testified at trial.

At trial, Dr. Ewert opined that Biehl was insane at the time of the crimes. He testified that Biehl's paranoid schizophrenia caused him to be fearful of other people, "thinking other people are threatening them, out to get them." R. at 1620. Dr. Aleksic found Biehl sane, but not without qualification. Based on Biehl's schizophrenia and

> his low tolerance to stress and pressure, his easy arousal and feeling of fear and vulnerability, he would be subject to some temporary distortion of his reality assessment capabilities.... [H]e was under a state of fear and intimidation and under those circumstances, he would be subject ... to some irrational behavior of a temporary nature. However, I did not feel that he was clearly without question insane, or crazy.

R. at 1673–74. Finally, Dr. Davis testified that Biehl "was delusional at a profound level," and that this condition elevated his perception of the confrontation with the teenage boys to a risk of being killed. R. at 1634. He concluded that sanity was "a very difficult call as far as medical certainty is concerned...." R. at 1638.[1]

---

1. It is important to note that expert medical opinion does not need to be given to a "medical certainty." "Medicine ... is not yet an exact science; to demand reasonable certainty in medical opinions places a sometimes insurmountable barrier in the face of the candid and straightforward medical expert." *Kaminski v. Cooper,* 508 N.E.2d 29, 30–31 (Ind.Ct.App.1987), *trans. denied* (quoting *Noblesville Casting Div. of TRW, Inc. v. Prince,* 438 N.E.2d 722, 727 (Ind.1982)). "Meaningful medical diagnoses and prognoses ... depend upon probability NOT possibility or certainty." *Beaman v. Hedrick,* 146 Ind.App. 404, 411, 255 N.E.2d 828, 832 (1970) (emphasis in original).

This concept of medical probability, rather than certainty is especially appropriate in the difficult area of mental illness. Considered in this context, the opinion of Dr. Davis had substantial probative value as to the severity of Biehl's mental illness at the time of the crimes.

The jury found Biehl guilty but mentally ill of the lesser included offenses of voluntary manslaughter, a Class A felony, and Criminal Recklessness, a Class C felony. He was sentenced to the presumptive terms of thirty years for voluntary manslaughter and four years for criminal recklessness, to be served concurrently. The convictions were affirmed by a memorandum decision of this court in 1993. Biehl then filed a petition for post-conviction relief attacking the trial court's failure to find his mental illness as a mitigating circumstance. The petition was granted in 1999, and Biehl was ordered to be resentenced.

At resentencing, the trial court found no aggravating circumstances and three mitigating circumstances—no criminal history, remorse, and mental illness. Nevertheless, the trial court imposed the same sentence. This is a direct appeal of that sentence.

### Discussion and Decision

Biehl contends, in light of the three mitigating and no aggravating circumstances found by the trial court, his presumptive sentences are manifestly unreasonable. We agree.[2]

■ The Indiana Constitution gives this Court the power to review and revise sentences "to the extent provided by rule." Ind. Const. Art. VII, § 6; *Redmon v. State*, 734 N.E.2d 1088, 1094 (Ind.Ct.App. 2000). We will revise a sentence authorized by statute only when it is manifestly unreasonable in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 17(B); *Redmon*, 734 N.E.2d at 1094. This inquiry requires the appellate court to reexamine all valid aggravating circumstances and mitigating

circumstances. *Carter v. State*, 711 N.E.2d 835, 841 (Ind.1999).

■ We begin with the nature of the offense. Unlike many crimes in which the defendant seeks out his victim, the victims of these unfortunate shootings, to some extent, sought out Biehl. They entered his makeshift dwelling, threw bricks and boards at him, and refused to leave when asked to do so. Only then did Biehl depart and retrieve a gun. Although we are certainly troubled by the death and serious bodily injury that ensued, the totality of the circumstances surrounding the shootings point in favor of a mitigated sentence.

The same is true, with even greater force, in regard to the character of the offender. We are particularly influenced by Biehl's lack of criminal history and longstanding mental illness.

The General Assembly has recognized the significance of a defendant's lack of criminal history by specifically listing it as a mitigating circumstance in the sentencing statute. *See* Ind.Code § 35-38-1-7.1(c)(6) (1998). The statute appropriately encourages leniency toward defendants who have not previously been through the criminal justice system. Such mitigation is especially appropriate for a defendant like Biehl, thirty-five years old at the time of his crimes, who has lived a law-abiding life for decades.

Our supreme court has likewise recognized the significance of a lack of criminal history in sentencing. In a number of cases, it has found the maximum sentence to be manifestly unreasonable, at least in part, because the defendant did not have a prior criminal history. *Edgecomb v. State*, 673 N.E.2d 1185, 1198–1200 (Ind.1996); *Mayberry v. State*, 670 N.E.2d 1262, 1271 (Ind.1996); *Willoughby v. State*, 660

---

2. We readily acknowledge that several defendants have challenged their presumptive sentence as manifestly unreasonable, but to date none have been successful. *See, e.g., Kilgore v. State*, 720 N.E.2d 1155, 1156 (Ind.1999); *Merrill v. State* 716 N.E.2d 902, 905 (Ind. 1999); *Ford v. State*, 704 N.E.2d 457, 461–62

(Ind.1998). However, in each of these cases, the trial court found one or more valid aggravating circumstances that offset the mitigating circumstance(s). These cases are not controlling here, where the trial court found three mitigating circumstances and no aggravating circumstance to offset them.

N.E.2d 570, 584–85 (Ind.1996); *Widener v. State,* 659 N.E.2d 529, 534 (Ind.1995); *Walton v. State,* 650 N.E.2d 1134, 1137 (Ind.1995); *Harrington v. State,* 584 N.E.2d 558, 565 (Ind.1992).[3] Unlike the defendants in these cases, Biehl was not given the maximum sentence. Nevertheless, this significant mitigating circumstance should be given some weight in Biehl's sentence.

▮ Likewise, mitigating weight should also be given to Biehl's mental illness. Our supreme court has outlined several considerations that bear on the weight, if any, that should be given to mental illness in sentencing. These factors include: (1) the extent of the defendant's inability to control his or her behavior due to the disorder or impairment; (2) overall limitations on functioning; (3) the duration of the mental illness; and (4) the extent of any nexus between the disorder or impairment and the commission of the crime. *Weeks v. State,* 697 N.E.2d 28, 31 (Ind. 1998) (citing *Archer v. State,* 689 N.E.2d 678, 685 (Ind.1997)).

The trial court considered these factors and found Biehl's mental illness to be a mitigating circumstance in its sentencing order:

Petitioner suffers from a mental illness.
a) The mental illness was a significant factor in Petitioner's character and his behavior.
b) The mental illness was not of such degree that it precluded Petitioner from acting in a different manner.
c) The mental illness was of significant duration.
d) There is some connection between Petitioner's disorder or impairment and the commission of the crime.

R. at 84.

Several cases from our supreme court have found the maximum sentence manifestly unreasonable for a defendant who was suffering a mental illness. *Weeks,* 697 N.E.2d at 31–32; *Archer,* 689 N.E.2d at 685–86; *Gambill v. State,* 675 N.E.2d 668, 677–78 (Ind.1996); *Mayberry,* 670 N.E.2d at 1271; *Barany v. State,* 658 N.E.2d 60, 67 (Ind.1995); *Walton,* 650 N.E.2d at 1137; *Christopher v. State,* 511 N.E.2d 1019, 1023 (Ind.1987).[4] In each of these cases, the supreme court found that the defendant's mental illness must be accorded some weight in sentencing. Indeed, a defendant like Biehl who is suffering from a severe, longstanding mental illness that has some connection with the crime(s) for which he was convicted and sentenced is entitled to receive *considerable* mitigation of his sentence, as the ten to forty year sentence reductions in the cited cases highlight.

In sum, we hold that the trial court's failure to assign any mitigating weight to Biehl's complete lack of criminal record and his severe and longstanding mental illness results in a manifestly unreasonable sentence. Although our supreme court has observed that "the 'proper' weight to

---

**3.** In addition, the significance of a lack of criminal history was recently underscored in *Dowdell v. State,* 720 N.E.2d 1146, 1154 (Ind. 1999), in which our supreme court held that the trial court's failure to "find and balance this significant mitigating circumstance" required remand for resentencing. Here, the trial court found Biehl's lack of criminal history to be mitigating but assigned it no weight. Thus, remand is not appropriate. Instead, we proceed under the manifestly unreasonable doctrine. *See generally Hackett v. State,* 716 N.E.2d 1273, 1276 n. 1 (Ind.1999) (explaining the differences between errors in a sentencing statement and a claim of manifest unreasonableness).

**4.** The State correctly points out that "a review of these cases reveals that none of those defendants' sentences were reduced beyond the presumptive." Brief of Appellee at 6. However, this assertion misses the point, as each of these cases presents one or more significant aggravating circumstances, including that the murders were especially brutal and heinous or the defendant had a prior history of criminal activity, against which mental illness was weighed in arriving at the presumptive.

be afforded by the trial court to the mitigating factors may be to give no weight to them at all," *Ross v. State*, 676 N.E.2d 339, 347 (Ind.1996),[5] the cases cited above make clear that this general statement cannot be applied to every case, and indeed not to cases involving defendants who have no criminal history and a severe and long-standing mental illness.

Under our constitutional duty to review and revise sentences, we remand this case to the trial court with instructions to prepare an amended sentencing order and abstract imposing the minimum sentence of twenty years for voluntary manslaughter, to be served concurrently with two years for criminal recklessness. We realize that, if Mr. Biehl has remained in Credit Class I during his incarceration, this reduction will result in his immediate release.

Remanded with instructions.

SULLIVAN, J., concurs.

ROBERTSON, S.J., concurs in result.

---

5. In *Ross*, the trial court found several aggravating circumstances and only two mitigating circumstances. Our supreme court held that the maximum sentence was not manifestly unreasonable, rejecting the defendant's "invitation to second-guess the trial court's balancing of the circumstances affecting sentencing." *Ross*, 676 N.E.2d at 347. Here, unlike *Ross*, there was no balancing. Three mitigating circumstances balanced against no aggravating circumstances must necessarily tip the scales in favor of a mitigated sentence.