Heather J. SHAW, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 46A05–0202–CR–65.

Court of Appeals of Indiana.

July 15, 2002.

Donald W. Pagos, Michigan City, IN, Attorney for Appellant.

Steve Carter, Attorney General, Grant H. Carlton, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

Heather J. Shaw pled guilty and was convicted of attempted murder,[1] a Class A felony. She was sentenced to fifty years' imprisonment, which she appealed. A panel of this court determined that the

---

1. *See* IC 35–41–5–1; IC 35–42–1–1.

trial court considered an improper aggravating circumstance and remanded the case for re-sentencing. On remand, the trial court found that "the original sentence of fifty (50) years remains appropriate." Shaw appeals again, arguing that the amended sentencing order is insufficient and her sentence is manifestly unreasonable.

We affirm.

## FACTS AND PROCEDURAL HISTORY

The pertinent facts are found in our memorandum decision in Shaw's previous appeal, *Shaw v. State*, No. 46A05–001–CR–472, 756 N.E.2d 1101 (Ind.Ct.App. September 26, 2001):

"The facts reveal that the victim, Nick Glumac, suffered from lung cancer, which eventually confined him to his bed and required him to have home health care assistance. In September 1998, Glumac's family hired Shaw to live in Glumac's home and care for him at night. During periods of time in which Glumac required hospitalization, Shaw and her six-year-old son would continue living in Glumac's home and Shaw would, in effect, be on vacation from taking care of him.

In May 1999, Glumac was hospitalized for over one week due to an allergic reaction to an antibiotic. Shaw enjoyed this vacation from Glumac, as she thought he was too controlling. Shaw, still needing a break from him, decided to buy a tablet grinder on the day of his release from the hospital so that she could slip the antibiotic into his food. Upon her first attempt, Glumac refused to eat the food because it tasted bad. For four days thereafter, morning and night, Shaw stirred the crushed drug into his juice. She observed no effect.

Shaw next attempted to induce an allergic reaction from Glumac by changing laundry detergent. This, too, did not achieve her desired result of sending Glumac back to the hospital. She then, for six days, replaced Glumac's kidney medication with different medication that she had stolen from another patient. She became very frustrated that there was no apparent effect on Glumac.

On June 13, Shaw obtained antifreeze, and the following day, she put a potentially lethal dose in Glumac's coffee. She made sure that he drank all of it and then left for her day job. Shaw returned later that day and found Glumac incoherent and confused. Finally, she had succeeded and Glumac was hospitalized on June 14.

Shaw visited Glumac in the hospital each day and spent time with his family. At no time did she alert anyone to the possibility that he might be suffering from being poisoned. After a lengthy visit on June 17, she took one of Glumac's checks, forged it, and cashed it for one hundred dollars. On June 18, Glumac's family disconnected his life support and the following day he passed away from kidney failure. That same day, Shaw forged another one hundred dollar check.

On June 27, Shaw's best friend sought out the police and informed them of what she knew about Shaw's conduct. Police questioned Shaw soon thereafter, but she denied any wrongdoing. A second interview with Shaw was conducted on July 5. She initially admitted stealing Glumac's checks but denied poisoning him. Once a lie detector test was set up, Shaw broke down and confessed.

The State charged Shaw with attempted murder on July 8, 1999. The State initially believed that it could not prove the cause of death because Glu-

mac had been cremated. On February 18, 2000, however, the State filed a motion to amend the charging information to add a charge of murder. Before the trial court could rule upon the motion, Shaw reached a plea agreement with the State. Pursuant to the plea agreement, Shaw pled guilty to attempted murder and the State dismissed forgery charges that were filed in a separate action. The plea agreement made no provision with regard to sentencing."

*Id.* at * 2–4.

The trial court sentenced Shaw to fifty years' imprisonment. In her first appeal, Shaw argued that the trial court improperly considered Glumac's death as an aggravating circumstance.[2] *Id.* at * 5. Relying on *Conwell v. State*, 542 N.E.2d 1024 (Ind. Ct.App.1989), a panel of this court determined that the trial court erred when it considered Glumac's death as an aggravating circumstance because attempted murder is a lesser included offense of murder and "when a defendant pleads guilty to an included offense, the element(s) distinguishing it from the greater offense may not be used as an aggravating circumstance to enhance the sentence." *Id.* at * 6. The case was then remanded for proceedings consistent with our opinion.

On remand, the trial court again sentenced Shaw to fifty years' imprisonment. Shaw now appeals.

### I. The Amended Sentencing Order

Shaw contends "the trial court's amended sentencing order contains no reference to the specific nature of the offense or the character of the offender and is therefore insufficient to afford an adequate review of the propriety of the fifty year sentence." *Appellant's Brief* at 7. The State argues that the trial court's amended sentencing

statement directly addresses our decision that it applied an improper aggravating circumstance and the amended order, taken in conjunction with the original sentencing order, is sufficient.

▮▮▮ First, we note that "[a] sentencing statement serves two purposes: (1) it guards against the imposition of arbitrary or capricious sentences by ensuring that the sentencing judge will consider only proper factors; and (2) it facilitates appellate review of the sentence." *Singer v. State*, 674 N.E.2d 11, 14 (Ind.Ct.App.1996) (citation omitted).

"As long as the record indicates that the trial court engaged in the evaluative processes and the sentence was not manifestly unreasonable, the purposes of the sentencing statement have been satisfied. When reviewing a sentencing statement this court is not limited to the written sentencing order but may examine the record as a whole to determine that the trial court made a sufficient statement of its reasons for selecting the sentence imposed."

*Id.* (internal citation omitted); *see also Newman v. State*, 719 N.E.2d 832, 839 (Ind.Ct.App.1999), *trans. denied* (2000).

▮▮▮ A sentencing statement must include: "(1) the identification of all significant mitigating and aggravating circumstances; (2) the specific facts and reasons that led the court to find the existence of each such circumstance; and (3) reflection of an evaluation and balancing of the mitigating and aggravating circumstances in fixing the sentence." *O'Connell v. State*, 742 N.E.2d 943, 951 (Ind.2001) (citing *Widener v. State*, 659 N.E.2d 529, 533 (Ind. 1995)). In her first appeal, Shaw did not argue that the trial court's sentencing statement was insufficient, and we find

---

**2.** Shaw also argued in her first appeal that her sentence was manifestly unreasonable.

However, in light of our decision to remand the case, we did not address that argument.

that the trial court's original sentencing statement sufficiently identified and discussed the aggravating and mitigating circumstances and reflected a balancing of those circumstances in fixing Shaw's sentence. The case was remanded for re-sentencing solely on the grounds that the trial court considered an improper aggravating circumstance. Where a case has been remanded for re-sentencing, "a trial court's responsibility in that circumstance is to produce a new sentencing order that responds to the concerns" raised by our court.[3] *Id.* at 952.

In this case, the trial court issued the following amended sentencing order on remand: "[t]he court has now engaged in the process of reweighing the *valid* aggravating circumstances and mitigating circumstances and finds that the aggravating circumstances outweigh the mitigating circumstances. The Court further finds that the original sentence of fifty (50) years remains appropriate." *Appellant's Appendix* at 107 (emphasis added). Although the amended sentencing order does not specifically set out each aggravating and mitigating circumstance, it sufficiently responds to this court's concern that the trial court initially considered an improper aggravating circumstance. Therefore, the amended order taken in conjunction with the original sentencing order is sufficient.

## II. Reasonableness of Sentence

Shaw next argues that her sentence is manifestly unreasonable. "Although a trial court may have acted within its lawful discretion in determining a sentence," *Buchanan v. State*, 767 N.E.2d 967, 972 (Ind.2002), Article 7, Section 6 of the Indiana Constitution authorizes independent appellate review and revision of a sentence imposed by the trial court. "This appellate authority is implemented through Indiana Appellate Rule 7(B), which provides: 'The Court shall not revise a sentence authorized by statute unless the sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender.'" *Id.* at 972–73 (citing App. R. 7(B)).

The presumptive sentence is meant to be the starting point for the court's consideration of the sentence that is appropriate for the crime committed. *See Lander v. State*, 762 N.E.2d 1208, 1214–15 (Ind.2002); *Bustamante v. State*, 557 N.E.2d 1313, 1321 (Ind.1990). In this case, Shaw was convicted of attempted murder, a Class A felony. The presumptive sentence for a Class A felony is thirty years. IC 35–50–2–4.

In its original sentencing order, the trial court found the following valid aggravating circumstances: 1) Shaw's actions were part of a prolonged effort to harm Glumac; 2) Shaw was in a position of trust with Glumac and his family and Glumac was entirely dependent upon her help and care; 3) Glumac was seventy-three years old at the time the events took place; and 4) after Glumac was taken to the hospital upon ingesting the antifreeze, Shaw never offered any information to Glumac's medical providers, which possibly could have saved his life. *Appellant's Appendix* at 81–82. In addition, the trial court found the following mitigating circumstances: 1) Shaw pled guilty; 2) Shaw had no previous criminal history other than traffic-related matters; and 3) Shaw

---

**3.** In responding to an appellate court's concerns, on remand a trial court may 1) issue a new sentencing order without taking any further action; 2) order additional briefing on the sentencing issue and issue a new order; or 3) order a new sentencing hearing at which the court may allow additional factual submissions and issue a new order based on the presentation of the parties. *Id.*

expressed remorse for her actions to Glumac's family. *Id.* at 82.

Shaw received the maximum sentence of fifty years for her conviction of attempted murder, a Class A felony. She contends that the maximum sentence should be reserved for the very worst offenses and the very worst offenders. *Appellant's Brief* at 6 (citing *Buchanan v. State,* 699 N.E.2d 655 (Ind.1998)). She argues that because she had no previous criminal record other than traffic related matters and because she accepted responsibility for her actions by pleading guilty, she "was not the very worst offender and this was not the very worst offense;" *id.* at 7, therefore, her maximum sentence of fifty years is manifestly unreasonable.

Nonetheless, we find nothing in the nature of this offense and the character of this offender to indicate that Shaw's sentence was manifestly unreasonable. Shaw was hired by Glumac's family to care for the ailing, elderly man and was in a position of trust with both Glumac and his family. At some point, Shaw lost her home, and Glumac and his family allowed Shaw and her young son to live in Glumac's home in addition to receiving her salary. Shaw's young son referred to Glumac as "grandpa." In spite of this trust and assistance, Shaw set out on a prolonged plan to poison Glumac, watching the effect of various substances and trying different approaches to achieve the desired effect, culminating in serving Glumac antifreeze in his morning coffee. Afterward, Shaw sat with Glumac's family, never suggesting what she had done. Had she done so, Glumac's doctors may have been able to help him. Instead, Shaw commiserated as though she were a member of the family, but at the same time stole Glumac's checks, then forged and cashed them. Shaw only confessed when police confront-

ed her and arranged a polygraph examination.

While Shaw had no prior criminal history, this fact alone does not paint an accurate picture of Shaw's character. Shaw calmly and methodically plotted and acted to poison Glumac, watching the results of her work while pretending to share in his family's grief. Afterwards, she explained that Glumac was too demanding and that she needed a "vacation" from him. In light of Shaw's character and the nature of her offense, we do not find that her sentence is manifestly unreasonable and therefore we decline to revise it.

Affirmed.

BARNES, J., concurs.

MATHIAS, J., dissents with separate opinion.

MATHIAS, Judge, dissenting.

I respectfully dissent.

Our supreme court has determined that " 'the maximum possible sentences are generally most appropriate for the worst offenders.' " *Buchanan v. State* 767 N.E.2d 967, 973 (Ind.2002) (quoting *Evans v. State,* 725 N.E.2d 850, 851 (Ind.2000)). As the majority noted, Shaw argues that she is not the "very worst offender" because of her lack of criminal history. Op. at 90.

Our General Assembly has determined that a defendant's prior or lack of criminal history is so significant that trial courts "shall" consider it when determining what sentence to impose. *See* Ind.Code § 35–38–1–7.1(a) (Supp.2002); *see also Hildebrandt v. State,* 770 N.E.2d 355, 361–62 (2002). "The statute appropriately encourages leniency toward defendants who have not previously been through the criminal justice system." *Biehl v. State,* 738 N.E.2d 337, 339 (Ind.Ct.App.2000), *trans.*

*denied.* Our supreme court has also recognized that a lack of criminal history is significant in sentencing. *Id.* It has found the maximum sentence to be manifestly unreasonable in a number of cases, at least in part, due to the defendant's lack of a prior criminal history. *Id.* (citing *Edgecomb v. State,* 673 N.E.2d 1185 (Ind.1996); *Mayberry v. State,* 670 N.E.2d 1262 (Ind. 1996); *Willoughby v. State,* 660 N.E.2d 570 (Ind.1996); *Widener v. State,* 659 N.E.2d 529 (Ind.1995); *Walton v. State,* 650 N.E.2d 1134 (Ind.1995); *Harrington v. State,* 584 N.E.2d 558 (Ind.1992)).

Perhaps Shaw should have been tried for murder. She was initially charged with attempted murder but seven months later, the State moved to amend the charging information to add a charge of murder. However, before the trial court could rule on the State's motion to amend, Shaw and the State agreed to the terms of a plea agreement on the attempted murder charge.

Plea agreements are a well-established part of our system of justice. They represent the best interests both of law enforcement, through the prosecuting attorney, and of the individual defendant involved. Most importantly, they are subject to review and approval by the judiciary. *See* Ind.Code § 35–35–3–3 (1998).

Judge Gilmore was charged with the difficult decision of reviewing Shaw's plea agreement. He chose to approve the agreement, when he could have chosen to reject it instead, especially in light of the State's pending motion to amend the charging information to add the charge of murder. But by approving the plea agreement, he established the possible sentencing range at a presumptive thirty years, with a minimum sentence of twenty years and a maximum sentence of fifty years. *See* Ind.Code § 35–50–2–4 (1998). In comparison, the possible sentencing range for murder would have been a presumptive sentence of fifty-five years, with a minimum sentence of forty-five years and a maximum sentence of sixty-five years. *See* Ind.Code § 35–50–2–3 (1998).

At the initial sentencing hearing, before the first appeal and remand, Judge Gilmore found the following valid aggravating circumstances: 1) Shaw's actions were but a part of a prolonged effort to harm Glumac; 2) Shaw was in a position of trust with Glumac and his family and Glumac was entirely dependent upon her help and care; 3) Glumac was seventy-three years old at the time the events took place; and 4) after Glumac was taken to the hospital upon ingesting the antifreeze, Shaw never offered any information to Glumac's medical providers, which possibly could have saved his life. Appellant's App. pp. 81–82. In addition, the trial court found the following mitigating circumstances: 1) Shaw pled guilty; 2) Shaw had no previous criminal history other than traffic-related matters; and 3) Shaw expressed remorse for her actions to Glumac's family.[4] *Id.* at 82. Most importantly, however, in order to determine that Shaw's conduct warranted the maximum available sentence of fifty years, Judge Gilmore also incorrectly considered Mr. Glumac's death as an aggravating circumstance.

The death of Mr. Glumac obviously and understandably troubled Judge Gilmore at sentencing. However, as our court found in Shaw's first appeal, it was inappropriate to consider Mr. Glumac's death when sen-

---

**4.** However, the trial court also noted that it was "somewhat troubled by the contents of letters written by the Defendant to another inmate at the LaPorte County Jail. The sincer- ity of the Defendant's expressed remorse is therefore questionable." Appellant's App. p. 82.

tencing Shaw, and the case was remanded for re-sentencing on those grounds.

Upon re-sentencing, Judge Gilmore issued the following amended sentencing order: "[t]he court has now engaged in the process of reweighing the *valid* aggravating circumstances and mitigating circumstances and finds that the aggravating circumstances outweigh the mitigating circumstances. The Court further finds that the original sentence of fifty (50) years remains appropriate." Appellant's App. p. 107 (emphasis added).

The nature of Shaw's offense was a Class A felony, not murder. We should "consider the 'nature of the offense' in determining whether to revise the sentence imposed, as an indicator of a policy preference for imposition of the presumptive sentence." *Bradley v. State*, 770 N.E.2d 382, 388 n. 8 (2002) (citing *Hildebrandt*, 770 N.E.2d at 361). As we noted in *Hildebrandt*, "the presumptive sentence is meant to be the starting point for any court's consideration of the sentence which is appropriate for the crime committed." *Hildebrandt*, 770 N.E.2d at 361. In addition, part of our task upon review is to seek reasonable sentencing consistency statewide.

As the sentencing aggravators and mitigators disclose, the character of this offender clearly merits a sentence substantially in excess of the presumptive sentence. However, without the inappropriate aggravator of Mr. Glumac's death, and with the continued importance of the essentially mandatory mitigating circumstance of no significant prior criminal history, Judge Gilmore's summary re-sentencing to the maximum available sentence of fifty years was manifestly unreasonable. I would therefore remand this case to the trial court with instruc-

tion to reduce Shaw's sentence to forty-five years.