## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 18 2017, 9:49 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Melissa J. Haley
Martin & Martin PC
Boonville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Indiana Attorney General

Christina D. Pace
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Christopher Lee West,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

December 18, 2017

Court of Appeals Case No.
87A05-1703-CR-591
Appeal from the Warrick Circuit
Court.
The Honorable Greg A. Granger,
Judge.
Trial Court Cause Nos.
87C01-1409-F5-351
87C01-1410-FD-367

**Barteau, Senior Judge**

## Statement of the Case

[1] Christopher L. West appeals from the trial court's sentencing order from his convictions of one count of Class C felony battery resulting in serious bodily

injury,[1] and one count of Level 5 felony criminal recklessness.[2] He claims that his aggregate, eleven-year sentence is inappropriate given the nature of the offenses and his character, and that the trial court abused its discretion by failing to find that West's mental health was a significant mitigating circumstance. We affirm.

## Issues

West presents the following two issues for our review:

I. Whether West's sentence is inappropriate in light of the nature of the offense and the character of the offender; and

II. Whether the trial court abused its discretion by failing to find West's mental health was a significant mitigating circumstance, warranting a lesser sentence.

## Facts and Procedural History

The facts supporting West's guilty plea establish the following information. Warren J. Ingram and his wife, Mary, had been married for approximately thirty years when the separate events of 2014 took place. West lived with his mother, Mary, and step-father, Warren, during that period, with intermittent absences to live with other relatives. As of April 2014, West lived in a rental house on the same property as his mother and step-father's house.

---

[1] Ind. Code § 35-42-2-1 (2012).

[2] Ind. Code § 35-42-2-2(b)(2)(A) (2014).

[4] On April 26, 2014, West's step-father told West that his motorcycle and toolbox had fallen over inside the garage. Upon hearing this news, West became enraged and threatened his step-father.

[5] While in the garage, West jumped up on the lawnmower and grabbed his step-father by the throat. His step-father blacked out and was rendered unconscious. As a result of the attack, Warren's C3 to C7 vertebrae were damaged. Due to those injuries, Warren had numerous medical appointments–143–related to those injuries, and had accrued at least $38,800 in medical fees after insurance adjustments.

[6] Next, on September 9, 2014, West's mother approached him at his rental house on her property and notified him that he had thirty days to relocate. The major impetus for this notification was the April 26, 2014 altercation with West's step-father. Upon hearing the news, West became irate, took a gun from his gun safe and fired it into the living room floor. Next, he threw his mother down to the ground and used both knees to hold her arms down. He then struck her twice in the face. He expressed threats to both his mother and step-father before that incident ended.

[7] For the acts involving his mother, West was charged by the State with one count of Level 5 felony criminal recklessness, one count of Level 5 felony intimidation, and one count of Class A misdemeanor battery resulting in bodily injury under cause number F5-351. With respect to the acts involving his step-father, West was charged by the State with one count of Class C felony battery

resulting in serious bodily injury, one count of Class D felony strangulation, and one count of Class A misdemeanor battery resulting in bodily injury under FD-367. West pleaded guilty under both cause numbers as described above. He now appeals.

# Discussion and Decision

## I. Inappropriate Sentence

[8] West contends that his sentence is inappropriate in light of the nature of the offenses and his character. West received an aggregate sentence of eleven years for his two convictions.

[9] Our Supreme Court has set forth our standard of review as follows:

> Indiana Appellate Rule 7(B) provides, '[t]he Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender.' The principal role of appellate review should be to attempt to leaven the outliers . . . but not achieve a perceived "correct" result in each case. Defendant has the burden to persuade us that the sentence imposed by the trial court is inappropriate.

*Shoun v. State*, 67 N.E.3d 635, 642 (Ind. 2017).

[10] In considering the nature of West's offenses, the advisory sentence is the starting point the Legislature has selected as an appropriate sentence. *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. When determining the appropriateness of a sentence that deviates from

an advisory sentence, we consider whether there is anything more or less egregious about the offense as committed by the defendant that "makes it different from the typical offense accounted for by the legislature when it set the advisory sentence." *Holloway v. State*, 950 N.E.2d 803, 807 (Ind. Ct. App. 2011).

[11] West pleaded guilty to one count of Class C felony battery resulting in serious bodily injury, for which the sentencing range was two to eight years with the advisory sentence being four years under Indiana Code section 35-50-2-6(a), receiving a sentence of six years. He also pleaded guilty to one count of Level 5 felony criminal recklessness, for which the sentencing range was between one and six years with the advisory sentence being three years under Indiana Code section 35-50-2-6(b), receiving a sentence of five years. In exchange, West received the benefit of reducing his sentencing exposure by the dismissal of the other counts he faced. Thus, although he did not receive the advisory sentences for the crimes to which he pleaded guilty, he did not receive the maximum sentences for which he pleaded guilty.

[12] Turning to the nature of the offenses, West became enraged when he was told by his step-father that his motorcycle and tool box had fallen over inside the garage. He overreacted by strangling his step-father to the point that he lost consciousness. West's step-father's C3 to C7 vertebrae were damaged. Due to those injuries, Warren had numerous medical appointments–143–related to those injuries, and had accrued at least $38,800 in medical fees after insurance adjustments.

When West's mother advised him that he needed to move from the rental house on their property, West threw his mother to the ground, pinned down her arms, struck her, and then threatened to kill both her and Warren.

These offenses demonstrate an escalation in West's violent behavior. West has not demonstrated that the nature of his offenses warrants a downward revision in his sentence.

As for the character of the offender, one relevant consideration is the defendant's criminal history. *Sanders v. State*, 71 N.E.3d 839, 844 (Ind. Ct. App. 2017), *trans. denied*. The significance of any criminal history varies based upon the gravity, nature, and number of prior offenses in relation to the current offense. *Id.* West, who was at least forty-six years old at the time of sentencing, had two prior misdemeanor convictions, including criminal mischief and disorderly conduct.

Further, pending charges are a reflection on a defendant's character and are indicative of the risk of future criminal activity. *Bacher v. State*, 722 N.E.2d 799, 804 (Ind. 2000) (citing *Tunstill v. State*, 568 N.E.2d 539, 545 (Ind. 1991)). At the time of his sentencing, West faced four pending cases. Two cases were from Warrick County: allegations of Class A misdemeanor aggressive driving, allegations of Class A misdemeanor resisting law enforcement, and Level 6 felony battery by bodily waste. West faced another case from Daviess County involving allegations of Class D felony resisting law enforcement. In

Vanderburgh County, West faced allegations of Class B misdemeanor battery and Class B misdemeanor criminal mischief.

[17] Of course, while the pending charges do not reflect upon prior criminal history, the pending charges do reflect upon West's character. After attacking family members, instead of exhibiting remorse, West has allegedly lashed out against others, including those in positions of authority, in various communities.

[18] West argues that his mental health issues dictate a period of treatment, not a longer period of incarceration. West's argument vis-à-vis mental health issues will be addressed more fully below. Suffice it to say, West's counsel attempted to present the argument to the trial court through Warren's and West's testimony, but West maintained that he simply suffered from a sleep disorder.

[19] West has not met his burden of persuading us that his sentence is inappropriate in light of the nature of the offenses or the character of the offender.

## II. Failure to Find Mitigating Factor

[20] Next, West argues that the trial court abused its discretion by failing to find his mental health issues as a mitigating factor.

[21] Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. *Anglemyer*, 868 N.E.2d at 490. "An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable,

probable, and actual deductions to be drawn therefrom." *Id.* (quotation omitted).

[22] The finding of mitigating factors is discretionary with the trial court. *Fugate v. State*, 608 N.E.2d 1370, 1374 (Ind. 1993) (citing *Graham v. State*, 535 N.E.2d 1152, 1155 (Ind. 1989)). The trial court is not required to find the presence of mitigating factors. *Id.* (citing *Graham*, 535 N.E.2d at 1155). Further, the trial court is not required to weigh or credit the mitigating evidence the way appellant suggests it should be credited or weighed. *Id.* (citing *Hammons v. State*, 493 N.E.2d 1250, 1255 (Ind. 1986)). Likewise, if the trial court does not find the existence of a mitigating factor after it has been argued by counsel, the trial court is not obligated to explain why it has found that the factor does not exist. *Id.* (citing *Hammons*, 493 N.E.2d at 1254-55). To prevail on appeal, a defendant must show that the mitigating evidence not found by the trial court is both significant and clearly supported by the record.

[23] In *Biehl v. State*, 738 N.E.2d 337, 340 (Ind. Ct. App. 2000), *trans. denied*, we recognized our supreme court's statement of considerations when evaluating a claim of mental illness with respect to sentencing. The four factors outlined were: (1) the extent of the defendant's inability to control his or her behavior due to the disorder or impairment; (2) overall limitations on functioning; (3) the duration of the mental illness; and (4) the extent of any connection between the disorder or impairment and the commission of the crime. *Id.* (citing *Weeks v. State*, 697 N.E.2d 28, 31 (Ind. 1998)).

[24]     During the sentencing hearing, when West was asked by the trial court if he had ever been treated for any mental illness or if he currently suffered from any mental or emotional disability, he responded that he did not. His attorney asked West if he had been treated for any psychological issues, to which West responded that the treatment was more for a sleep disorder than a psychological issue. While West acknowledged that he had been seen by psychiatric services, he contended that he received a prescription for Lunesta, to help him sleep at night.

[25]     West did acknowledge that he was evaluated by Dr. David Cerling, who was unable to supply a clear mental health diagnosis. The doctor suggested that West's decidedly dangerous and erratic behavior might be part of psychotic episodes induced by over-consumption of energy drinks. He also surmised that West's behavior might be the result of a significantly impairing physiological disorder, either schizoaffective disorder, bipolar disorder, or a bipolar mood disorder.

[26]     Dr. Cerling concluded that incarceration would actually be less stressful for West from a social aspect than a work environment or dealing with close family relationships. Dr. Cerling was unable to give a mental illness diagnosis that registered on the Diagnostic and Statistical Manual of Mental Disorders. Further, he could not set a date of the onset of mental illness that would support West's attorney's assertion that he had been suffering from mental health issues for more than thirty years.

Significantly, Dr. Cerling could not show a connection between West's alleged mental impairment and the commission of the crimes against his step-father and mother. West has failed to show that the trial court abused its discretion by failing to find West's alleged mental health issues were significant and supported by the record.

Affirmed.

Najam, J., and Altice, J., concur.