## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Stacy R. Uliana
Bargersville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Ryan Vandeventer,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

August 8, 2018

Court of Appeals Case No.
18A-CR-445

Appeal from the
Greene Superior Court

The Honorable
Dena A. Martin, Judge.

Trial Court Cause No.
28D01-1706-F1-1

**Kirsch, Judge.**

[1] Ryan Vandeventer ("Vandeventer") pleaded guilty to aggravated battery[1] as a Level 3 felony and was sentenced to fourteen years in the Indiana Department of Correction ("DOC") with three years suspended to probation. He now appeals his sentence contending that it is inappropriate given the circumstances of his character and the nature of the offense.

[2] We affirm.

## Facts and Procedural History

[3] Vandeventer married Amber ("Amber") in December 2016. Soon thereafter, their marriage began to deteriorate. *Appellant's App. Vol. 2* at 48. By May 2017, Amber had become pregnant with the couple's first child, but the relationship was physically and emotionally abusive. *Tr. Vol. 2* at 28-29, 44-45.

[4] On May 4, 2017, the State filed domestic battery charges against Vandeventer under cause number 28D01-1705-F5-25 ("F5-25") after Amber alleged that Vandeventer struck her during a heated argument. *Appellant's App. Vol. 2* at 46. At the time of that incident, Vandeventer also exchanged cross words with Amber's mother, Vanessa Pursell ("Vanessa"), and stepfather, Glen Pursell ("Glen"). *Tr. Vol. 2* at 20. During this altercation, Glen ordered Vandeventer to leave the home. *Id*. at 10. The trial court issued a no-contact order between

---

[1] *See* Ind. Code § 35-42-2-1.5.

Amber and Vandeventer, and Amber moved in with Vanessa and Glen. *Appellant's App. Vol. 2* at 46; *Tr. Vol. 2* at 9.

[5] After Vandeventer's son ("the Child"), was born, Amber agreed to allow Vandeventer to see him on two separate occasions. *Tr. Vol. 2* at 11. Amber told Vandeventer that Vanessa and Glen hated him and did not want him to see the Child. *Id*. at 29, 45. She also claimed that the Pursells sought a no-contact order against Vandeventer, even though the couple had not done so. *Id*. at 46. The visitations with the Child were conducted in secret and lasted for fifteen minutes at a time, usually late at night. *Id*. at 11.

[6] On June 19, 2017, Vandeventer's charges in cause F5-25 were still pending, and Vandeventer had been released from jail after posting bond. *Tr. Vol. 2* at 50, 57; *Appellant's App. Vol. 2* at 46. Amber called Vandeventer and stated that she would allow him to see the Child at the Pursells' house. *Id*. at 10. Amber arranged to meet Vandeventer outside in the driveway, and Vandeventer insisted that Vanessa and Glen remain in the house while he was there. *Id*. at 10-11. Vandeventer drove his truck to the Pursells' house at around 9:00 p.m. *Id*. at 13. As he neared the residence, Vandeventer saw Amber standing with the Child in the front yard, and he also saw Glen standing in the road. *Id*. Glen had gone to retrieve the mail from the family's mailbox, but Vandeventer interpreted Glen's presence as an attempt to stop him from seeing the Child. *Id*. at 13, 21. Vandeventer became angry and drove his truck at a high speed into Glen's yard to try to push him out of the way. *Id*. Glen attempted to move to the side but was unable to avoid being struck by the vehicle. *Id*. at 21. As the

force of the collision knocked Glen to the ground, Vandeventer drove over Glen's legs with the front wheel of his truck. *Id.* at 14. After initially making contact with Glen, Vandeventer put the truck in reverse and drove over Glen's legs again. *Id.* Glen became entangled with the truck and was dragged a short distance before coming to rest in a ditch alongside the road. *Id.* at 22.Vandeventer's attack left Glen's legs "basically crushed." *Id.* at 14. Glen suffered from 31 fractures in both legs, and his left leg was irreparably injured and will never fully heal. *Id.* at 22. After four surgeries, he continues to walk with a limp. *Id.* at 22-23. Additionally, Glen was terminated from his position of employment due to his extended absence following Vandeventer's assault. *Id.* at 23.

[7] The State charged Vandeventer with attempted murder as a Level 1 felony, aggravated battery as a Level 3 felony, and invasion of privacy as a Class A misdemeanor. *Appellant's App. Vol. 2* at 11-14. Vandeventer pleaded guilty to aggravated battery as a Level 3 felony. *Id.* at 36. The plea agreement provided that the trial court would exercise its discretion in sentencing. *Id.* At his sentencing hearing, evidence was presented that Vandeventer was diagnosed a teenager with bipolar disorder and attention deficit/ hyperactivity disorder ("ADHD") and that he had attempted suicide. *Appellant's App. Vol. 2* at 42-43; *Tr. Vol. 2* at 41-42. At the age of thirteen, Vandeventer was placed in an in-patient treatment facility where he was prescribed psychotropic medications to control the symptoms of his mental illness. *Appellant's App. Vol. 2* at 49. After his release, Vandeventer quit taking these medications and began using

marijuana and synthetic drugs to cope with the symptoms of his mental illness. Between November 2014 and April 2016, Vandeventer had five misdemeanor convictions. *Id*. at 45-46, 49. Thereafter, Vandeventer sought no further medical care for his mental illness and, at the time of the present offense, was not taking any psychotropic medications to treat his condition. *Id*. at 49.

[8] The trial court found the following mitigators: (1) Vandeventer accepted responsibility for his actions by pleading guilty; (2) Vandeventer expressed remorse for his actions; (3) Vandeventer possessed a documented history of mental illness; and (4) Vandeventer appeared to have been influenced by misrepresentations made by Amber. *Tr. Vol. 2* at 57-58. The trial court also identified the following aggravating circumstances: (1) Vandeventer possessed a criminal history, including five misdemeanor convictions; (2) in committing the instant offense, Vandeventer violated the terms of a protective order and the terms of his probation; and (3) Vandeventer had been released on bond in cause F5-25 at the time he attacked Glen. *Id*.

[9] The trial court concluded that the aggravating circumstances outweighed the identified mitigators and imposed a fourteen-year sentence against Vandeventer. *Id*. The trial court suspended three years of the sentence to probation and ordered the remaining eleven years to be executed in the DOC. *Id*. at 57. The trial court also recommended Vandeventer to participate in the Purposeful Incarceration program while in the DOC. *Id*. at 57-58. Upon Vandeventer's successful completion of the program, the trial court indicated

that it would consider the possibility of sentence modification. *Id*. at 58. Vandeventer now appeals.

## Discussion and Decision

For his Level 3 felony aggravated battery conviction, the trial court sentenced Vandeventer to fourteen years with three years suspended to probation. Vandeventer now argues that his sentence is inappropriate based on his remorseful character and his lifetime of struggles with mental health and intellectual disabilities.

Pursuant to Indiana Appellate Rule 7(B), this Court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Our Supreme Court has explained that the principal role of appellate review should be to attempt to leaven the outliers, "not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). We independently examine the nature of the offense and the defendant's character under Appellate Rule 7(B) with substantial deference to the trial court's sentence. *Satterfield v. State*, 33 N.E.3d 344, 355 (Ind. 2015). In conducting our review, the test is whether the sentence is inappropriate, and we do not look to see whether another sentence might be *more* appropriate. *Barker v. State*, 994 N.E.2d 306, 315 (Ind. Ct. App. 2013), *trans. denied*. The appellant bears the burden of persuading us that his sentence is inappropriate. *Id*.

[12] "As to the nature of the offense, the advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed." *Kunberger v. State*, 46 N.E.3d 966, 973 (Ind. Ct. App. 2015). The nature of the offense is found in the details and circumstances of the commission of the offense and the defendant's participation. *Croy v. State*, 953 N.E.2d 660, 664 (Ind. Ct. App. 2011). The advisory sentence for a Level 3 felony conviction is nine years, with a range of between three and sixteen years. Ind. Code § 35-50-2-5.

[13] Vandeventer highlights that, since the age of three and at the time of his offense, he has struggled with mental health issues and deficiencies, including bipolar disorder and ADHD. *Tr. Vol. 2* at 51, 55. He contends that the evidence overwhelmingly shows that the aggravated battery crime is a reflection of his long-standing mental illness and intellectual disability.

[14] Our review of the record reveals that on May 4, 2017 there was a "falling out" between Vandeventer and Glen, and that neither of them had any further contact with one another until June 19, 2017, when Glen went to check his mail and saw Vandeventer's truck approaching him "briskly, faster than normal." *Id*. at 20-21. Upon realizing that Vandeventer was not going to stop, Glen put his hands up, pushed himself to the side, and was knocked down to the ground after the front half of Vandeventer's truck ran him over. *Id*. at 22. Vandeventer then stopped, backed up his truck, and ran over Glen again. *Id*. Glen suffered a total of thirty-one fractures in both of his legs. *Id*. He has had four separate surgeries, and each time, has had to get bigger plates and more screws put in his

legs to attempt to heal his injuries. *Id*. Because of this incident, Glen is unable to maintain employment. *Id*. at 23.

[15] Vandeventer was charged with one count of Level 1 felony attempted murder, one count of Level 3 felony aggravated battery, and one count of Class A misdemeanor invasion of privacy. *Appellant's App. Vol. 2* at 11-14. He pleaded guilty to Level 3 felony aggravated battery, and the attempted murder and invasion of privacy charges were dismissed. *Id*. at 5, 49. Vandeventer accepted the plea agreement at a substantial benefit to himself. Had he elected not to plead guilty, he would have faced a trial for Level 1 felony attempted murder, which carried a minimum sentence of twenty years if convicted.[2] Nothing about the nature of the offense warrants a reduction in the imposed sentence.

[16] "The character of the offender is found in what we learn of the offender's life and conduct." *Croy*, 953 N.E.2d at 664. Vandeventer says that his sentence is inappropriate due to his remorseful character, his lifetime of struggles with mental health, and his intellectual disabilities. To support his argument, Vandeventer states that his case is similar to *Biehl v. State*, 738 N.E.2d 337 (Ind. Ct. App. 2000). In *Biehl*, four teenage boys threatened and threw boards and bricks at Biehl who was living in an abandoned barn. *Id*. at 338. Biehl asked the boys to leave, but they refused. *Id*. Biehl left, returned with a gun, and shot at the boys, injuring one and killing another. *Id*. Biehl was charged with

---

[2] *See* Ind. Code § 35-50-2-4(b)

murder and attempted murder but was initially found to be incompetent to stand trial due to years of suffering from paranoid schizophrenia. *Id*. Biehl was later found competent to stand trial where he presented an insanity defense. *Id*. Medical professionals testified on Biehl's behalf that he was "insane at the time of the crimes" and "delusional at a profound level." *Id*. Biehl was found guilty but mentally ill of lesser offenses, voluntary manslaughter and criminal recklessness, and was sentenced to a total of thirty-four years. *Id*. at 339. This court found that in light of Biehl's severe, longstanding mental illness, lack of criminal history, and the absence of any aggravating circumstances, his sentence was unreasonable, and we remanded with instructions to impose the minimum sentence of twenty years. *Id*. at 338.

[17] Vandeventer's case differs from *Biehl*. At no point was Vandeventer deemed incompetent to stand trial because of his bipolar disorder and ADHD diagnoses. He did not raise an insanity defense, and no medical professionals testified that his actions were a result of his mental illness. Furthermore, unlike Biehl who shot the victims after they threatened and threw bricks and boards at him, Vandeventer targeted Glen as he was walking to the mailbox. There is no evidence that Glen physically harmed or made threats to Vandeventer. Finally, unlike *Biehl*, Vandeventer's case had multiple aggravating factors, including his past delinquent and criminal history, violation of a protective order and probation, and being out on bond at the time of the commission of the offense. *Tr*. at 56-57. The trial court concluded that the aggravating factors outweighed the mitigating factors. *Id*. at 57.

[18]     At the time of this offense, Vandeventer was out on bond for a pending domestic battery case, F5-25, in which he allegedly battered his pregnant wife. While a record of arrest may not be considered part of a defendant's criminal history, it is probative of poor character insofar as it demonstrates that the offender has been undeterred by past interactions with law enforcement. *Cotto v. State*, 829 N.E.2d 520, 526 (Ind. 2005). Vandeventer was convicted of five drug-related misdemeanors in the span of just two years. *Appellant's App. Vol. 2* at 45-46. At the time of the instant offense, he was still on probation in one of those cases. *Id*. Vandeventer was also in violation of a protective order by contacting his wife via telephone and going to the Glen residence where she was currently residing. *Id*. at 46. The trial court stated that Vandeventer needed to learn how to function in society without hurting people. *Id*. at 56-57. Finally, the trial court showed Vandeventer mercy by ordering him into the Purposeful Incarceration Program at the DOC. Upon successful completion of this program, the trial court agreed to step Vandeventer down from DOC to work release and eventually to place him on home detention so that he could be with his children.

[19]     Vandeventer has failed to establish that his sentence is inappropriate in light of the nature of the offense and his character.

[20]     Affirmed.

[21]     Vaidik, C.J., and Riley, J., concur.