**David Keith HILDEBRANDT,**
**Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 82A01–0108–CR–311.**

Court of Appeals of Indiana.

June 7, 2002.

356

Jon Aarstad, Evansville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Nandita G. Shepherd, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

David Keith Hildebrandt ("Hildebrandt") was convicted of two counts of sexual misconduct with a minor,[1] as Class B felonies, in Vanderburgh Superior Court. Hildebrandt was sentenced to serve twelve years executed on each count, and the trial court ordered the sentences to run consecutively. Hildebrandt appeals raising two issues, which we restate as:

I. Whether the trial court improperly relied on victim impact evidence as an aggravating factor to enhance Hildebrandt's sentence; and,

II. Whether Hildebrandt's sentence was manifestly unreasonable in light of the nature of the offense and character of the offender.

We affirm.

### Facts and Procedural History

On May 29, 2000, M.L. and K.M. were drinking alcohol and smoking cigarettes while sitting in K.M.'s father's boat, which was parked on K.M.'s father's property. Both M.L. and K.M. were fourteen-years old. At some point that evening, Hildebrandt was riding his bicycle and stopped to speak with M.L. and K.M. Hildebrandt was twenty-two-years old. M.L. told Hildebrandt that she went to school with his sister, and that she was fourteen-years old. Tr. pp. 18–19.

Eventually, M.L., K.M., and Hildebrandt went to K.M.'s "hangout," which was a converted garage attached to K.M.'s mother's house. Upon arriving at the "hangout," they all sat on K.M.'s waterbed, and K.M. began discussing oral sex. K.M. told Hildebrandt how many times she had performed oral sex, and he told her that she could perform oral sex on him, which she did. Tr. pp. 22–23. Hildebrandt then asked M.L. to have sexual intercourse with him. M.L. told Hildebrandt that she was scared and had never had sexual intercourse before, but eventually she did consent and they engaged in sexual intercourse. Tr. p. 25.

A few days later, K.M. was driving her father's pickup truck late at night when she observed Hildebrandt riding his bicycle. She stopped to speak with him. During their conversation, K.M. told Hildebrandt that she went to school with his sister and had just turned fourteen a few days prior. Tr. p. 75.

On June 5, 2000, K.M. was again driving her father's pickup truck when she saw Hildebrandt riding his bicycle. She stopped to speak to him, and they had a conversation regarding K.M.'s self-consciousness about her weight. Tr. p. 77. Hildebrandt asked K.M. if she wanted to have sexual intercourse, K.M. informed Hildebrandt that she was scared that it might hurt, and that she had never had sexual intercourse before, but eventually agreed to do so. Tr. p. 78. They then went to K.M.'s "hangout" and engaged in sexual intercourse.

On September 20, 2000, Hildebrandt was charged with three counts of sexual misconduct with a minor, as Class B felonies. In Count I, the State alleged that Hildebrandt submitted to sexual deviate conduct with K.M. by placing his penis in K.M.'s mouth. Counts II and III alleged that Hildebrandt performed sexual intercourse on M.L. and K.M. respectively. After a two-day jury trial, the jury found Hildebrandt not guilty of Count I, but guilty of

1. Ind.Code § 35–42–4–9 (1998).

Counts II and III. Hildebrandt was sentenced to serve twelve years executed for each count, and the trial court ordered the sentences to run consecutively. He appeals. Additional facts will be provided as necessary.

## I. Victim Impact Evidence

[1] Hildebrandt first argues that when it imposed enhanced and consecutive sentences for his two Class B felony convictions, the trial court improperly relied on victim impact evidence and did not explain why the impact in the case at hand exceeds that which is normally associated with the crime. Br. of Appellant at 7. The impact that the victim or the victim's family suffers as a result of a particular offense is generally accounted for in the presumptive sentence. *Simmons v. State,* 746 N.E.2d 81, 91 (Ind.Ct.App.2001), *trans. denied* (citing *Mitchem v. State,* 685 N.E.2d 671, 678 (Ind.1997)). " 'In order to validly use victim impact evidence to enhance a presumptive sentence, the trial court must explain why the impact in the case at hand exceeds that which is normally associated with the crime.' " *Id.* (quoting *Davenport v. State,* 689 N.E.2d 1226, 1233 (Ind.1997), *clarified on reh'g on other grounds* ).

In *Simmons,* the trial court found as an aggravating factor " 'the circumstances surrounding the family and the stress that the family has undergone, and also the tremendous impact that this action has had upon a minor child.' " *Id.* (quoting Trial Record at 465). However, the trial court did not explain why the impact to the victim and her family in that case was distinct from the impact felt by similarly situated victims. *Id.* We therefore determined that the trial court's reliance on that factor in sentencing the defendant was erroneous. *Id.*

[2] In this case, as in *Simmons,* the trial court considered the impact on M.L. and K.M. as an aggravating factor, but did not explain why the impact suffered by M.L. and K.M. "exceed[ed] that which is normally associated with the crime." *See id.* Therefore, we agree with Hildebrandt that the trial court improperly relied upon the impact suffered by M.L. and K.M. as an aggravating factor when it sentenced him.

[3–5] However, the trial court properly relied on other aggravating factors, including Hildebrandt's criminal history, when it imposed enhanced and consecutive sentences. "A single aggravating factor may be sufficient to support an enhanced sentence." *Id.* Also, a trial court may use the same aggravating factors to enhance a presumptive sentence and to justify consecutive sentences. *Id.* "Even when a trial court improperly applies an aggravator, a sentence enhancement may be upheld if other valid aggravators exist." *Walter v. State,* 727 N.E.2d 443, 447 (Ind.2000). Despite the trial court's reliance on an improper aggravating circumstance, the trial court found several other valid aggravating circumstances, including Hildebrandt's criminal history. Therefore, the trial court did not abuse its discretion when it imposed enhanced and consecutive sentences on Hildebrandt.

## II. Manifestly Unreasonable Sentence

### A. *Indiana's Sentencing Structure*

[6] There are generally two types of sentencing structures in the United States: indeterminate and determinate sentencing. "Indeterminate sentences are those 'sentence[s] of imprisonment the duration of which is not fixed by the court but is left to the determination of penal authorities within minimum and maximum time limits fixed by the court of law.' " *White v. Ind. Parole Bd.,* 713 N.E.2d 327, 329 n. 2 (Ind. Ct.App.1999), *trans. denied* (quoting Black's Law Dictionary 771 (6th ed.1990)).

It is this available, post-sentence intervention and modification by correctional authorities that makes such sentencing "indeterminate."

[7, 8] By contrast, a determinate sentence is defined as " 'one for a definite or certain number of years fixed by a court.' " *Id.* at 330 n. 3 (quoting *Jones v. Jenkins,* 267 Ind. 619, 621, 372 N.E.2d 1163, 1164 (1978)). Under a determinate sentencing system, while the legislature sets a range of punishments for the crime, the sentencing judge determines the length of the convicted defendant's sentence within that range. Although the date of release is determined at the time the sentence is imposed, a sentence may be administratively reduced by correctional authorities for good behavior during the term of the sentence. *See* Victoria J. Palacios, Article, *Go and Sin No More: Rationality and Release Decisions by Parole Boards,* 45 S.C. L.Rev. 567, 574 (1994). Indiana's sentencing structure has many features of a determinate sentencing system.

[9] Hildebrandt's sentences are "executed" sentences. An "executed sentence" *is one that is actually served in a correctional facility, or other alternative correctional program, such as work release or home detention as opposed to a suspended sentence or sentence of probation.*

Once a convicted defendant is sentenced, he or she is entitled to initial Class I classification upon arrival at a correctional facility or program. *See* Ind.Code § 35–50–6–4 (1998 & Supp.2002). Class I classification qualifies an inmate for sentence reduction by one-half, i.e. subtraction of one day of sentence for each day of good behavior ("good time"), in addition to credit for the day actually served. *See* Ind. Code § 35–50–6–3 (1998). Class II classification reduces the Class I credit to one day of good time for two days served and Class III classification denies any good

time credit. *Id.* Indiana sentencing judges can only recommend classification of a sentenced defendant; actual classification is determined by correctional authorities, subject to statutory due process. Ind. Code § 35–50–6–5 (1998 & Supp.2002).

[10] Within this structure, Hildebrandt argues that his sentence is manifestly unreasonable. He specifically argues that the trial court assigned too much weight to his minor and non-violent, unrelated prior criminal history of four misdemeanor convictions. "Although a trial court may have acted within its lawful discretion in determining a sentence," *Buchanan v. State,* 767 N.E.2d 967, 972 (Ind.2002), Article 7, Section 6 of the Indiana Constitution authorizes independent appellate review and revision of a sentence imposed by the trial court. "This appellate authority is implemented through Indiana Appellate Rule 7(B), which provides: 'The Court shall not revise a sentence authorized by statute unless the sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender.' " *Id.* at 972–73 (citing App. R. 7(B)).

While appellate courts are loathe to substitute their judgments for those of the sentencing trial courts, sentences which approach or equal the maximum lawful sentence for the class of crime at issue (as well as, we presume, sentences which approach or equal the minimum lawful sentence) have historically invited appellate review and, upon occasion, revision. This characteristic accounts for our supreme court's requirement that, in order to merit revision, a sentence cannot only be "manifestly unreasonable," but must also be "clearly, plainly, and obviously so." Sentences at the extremes of the lawful range are more frequently (but are not always) clearly, plainly, and obviously unreasonable. *See e.g. Buchanan,* 767 N.E.2d at

974; *McCann v. State,* 749 N.E.2d 1116, 1122 (Ind.2001); *Lemos v. State,* 746 N.E.2d 972, 976 (Ind.2001); *Rascoe v. State,* 736 N.E.2d 246, 250 (Ind.2000); *Bonds v. State,* 729 N.E.2d 1002, 1007 (Ind.2000); *Baxter v. State,* 727 N.E.2d 429, 437 (Ind.2000); *Evans v. State,* 725 N.E.2d 850, 851–52 (Ind.2000); *Garrett v. State,* 714 N.E.2d 618, 623 (Ind.1999); *Carter v. State,* 711 N.E.2d 835, 843 (Ind. 1999); *Weeks v. State,* 697 N.E.2d 28, 31 (Ind.1998).[2]

## B. *The Nature of the Offense*

[11] Review of the language and history of sentencing and appellate sentence revision in Indiana leads us to the conclusion that "the nature of the offense" under Indiana Appellate Rule 7(B) speaks to the statutory presumptive sentence for the class of crimes to which the offense belongs, e.g. Class B felony, etc. These classifications and their respective presumptive sentences, enhancements, and reductions have been determined by the General Assembly as matters of public policy.

The presumptive sentence is meant to be the starting point for any court's consideration of the sentence which is appropriate for the crime committed. *See Lander v. State,* 762 N.E.2d 1208, 1214–15 (Ind.2002); *Bustamante v. State,* 557 N.E.2d 1313, 1321 (Ind.1990). In this case, Hildebrandt was convicted of two counts of sexual misconduct with a minor,

**2.** The "clearly, plainly, and obviously" unreasonable test originated in *Prowell v. State,* 687 N.E.2d 563 (Ind.1997). Subsequently, Judge Najam has observed that the "clearly, plainly, obviously" test appears to distort Appellate Rule 7(B) (formerly Appellate Rule 17(B)) and that test effectively reinstates the tougher standard of review that our supreme court abandoned when it amended former Appellate Rule 17(B) in 1997 by deleting the following paragraph:

each involving a different victim, and each a Class B felony. The presumptive sentence for a Class B felony is ten years. Ind.Code § 35–50–2–5 (1998).

## C. *The Character of the Offender*

[12] The language and history of sentencing and appellate sentencing revision in Indiana also leads us to the conclusion that "the character of the offender" under Indiana Appellate Rule 7(B) speaks to the general sentencing considerations under Indiana Code section 35–38–1–7.1(a) and the balancing of the specific aggravating and mitigating circumstances called for under Indiana Code section 35–38–1–7.1(b) and (c), as well as the other factors left to the trial courts' discretion under section 35–38–1–7.1(d).

The factors that disclose "the character of the offender" are an assortment of general and specific, mandatory and discretionary considerations, first reviewed by the trial court in its initial sentencing of an offender and then reviewed again if at issue on appeal. The patchwork nature of these factors, while regrettable, is the product of the continuous and evolutionary change in the sociological backdrop against which criminal conduct occurs, such as use of bulletproof clothing, HIV-infected offenders, shaken baby syndrome, and the victim who becomes an offender when responding to repeated abuse.

> A sentence is not manifestly unreasonable unless no reasonable person could find such sentence appropriate to the particular offense and offender for which such sentence was imposed.

*See King v. State,* 769 N.E.2d 239, 241 (Ind. Ct.App.2002) (Najam, J., concurring in result). While we acknowledge this apparent distortion, we believe that "clearly, plainly, obviously" are merely adverbs that describe the extreme nature of the otherwise lawful sentences meriting revision.

The General Assembly has determined that the following factors are so significant that a trial court must consider them when imposing a sentence:

1) the risk of recidivism;
2) the nature and circumstances of the crime committed;
3) the defendant's prior criminal record, character, and condition;
4) whether the victim was less than twelve or at least sixty-five years old at the time of the offense;
5) the commission of the crime in the presence or hearing of a child (who was not the victim);
6) whether the defendant violated a protective order; and
7) any statement made by the victim of the crime.

*See* Ind.Code § 35–38–1–7.1(a) (Supp. 2002).

Additionally, there are certain circumstances that a trial court "may consider" as aggravating circumstances justifying sentence enhancements, including:

1) violations of probation, parole, or pardon;
2) the defendant's need of correctional or rehabilitative treatment that can best be provided by commitment to a penal facility;
3) reduction or suspension of the sentence would depreciate the seriousness of the crime;
4) the victim's mental and physical condition;
5) the commission of a forcible felony while wearing a bulletproof garment;

6) the commission of a sex offense knowing there was a risk of transmitting HIV;
7) the commission of a controlled substance offense knowing there was a risk of transmitting HIV;
8) the commission of a crime in an area of a city designated as a public safety improvement;
9) the victim's injury or death was the result of shaken baby syndrome;
10) the administration of a drug to the victim with a sedating or hypnotic effect without the victim's knowledge, or knowing that such drug had been given to the victim; and
11) the defendant's employment of the penal system and commission of trafficking with an inmate.

*See* Ind.Code § 35–38–1–7.1(b).[3]

The trial court also "may consider" certain mitigating circumstances favoring the reduction or suspension of the sentence, including:

1) the crime neither caused or threatened serious harm to persons or property;
2) the crime was the result of circumstances unlikely to recur;
3) the victim induced or facilitated the offense;
4) there are grounds that tend to excuse or justify the crime;
5) the defendant acted under strong provocation;
6) the defendant will likely respond affirmatively to probation or short term imprisonment;
7) the defendant made or will make restitution to the victim;

---

**3.** We note that the "discretionary" consideration of a defendant's prior criminal history under Indiana Code section 35–38–1–7.1(b)(2) and the age of the victim under (b)(5) are actually mandatory considerations under Indiana Code section 35–38–1–7.1(a)(3)(A) and (a)(4).

8) the defendant's imprisonment would result in undue hardship to the defendant or his dependents, and

9) the defendant was convicted of a crime involving the use of force against a person who had repeatedly abused the defendant.

*See* Ind.Code § 35–38–1–7.1(c).

However, the trial court is not only limited to considering the factors and circumstances listed above, but may also consider other aggravating or mitigating circumstances in determining the sentence. *See* Ind.Code § 35–38–1–7.1(d). Examples of additional, discretionary aggravators properly considered by sentencing courts have included the defendant's lack of remorse, *see e.g. Deane v. State*, 759 N.E.2d 201, 205 (Ind.2001), and the violation of a position of trust and confidence, *see e.g. Walter v. State*, 727 N.E.2d 443, 448 (Ind.2000). Also, when a trial court contemplates reducing a sentence from the presumptive, the court may consider whether "imposition of a reduced sentence or suspension of the sentence and imposition of probation would depreciate the seriousness of the crime." Ind.Code § 35–38–1–7.1(b)(4); *Mitchell v. State*, 726 N.E.2d 1228, 1242 (Ind.2000). As society changes, it is reasonable to expect that new, discretionary aggravators (and mitigators) will be considered by sentencing courts.

[13] Like the presumptive sentence, these mandatory factors, enumerated aggravating and mitigating circumstances, and the trial court's discretion have been determined and recognized by the General Assembly as matters of public policy. Indiana Code section 35–50–2–5 provides that an additional ten years may be added to the presumptive ten-year sentence for a Class B felony conviction for aggravating circumstances, and four years may be subtracted from the presumptive sentence for mitigating circumstances. Ind.Code § 35–50–2–5 (1998). Trial courts' deviation from a presumptive sentence is meant to be well-grounded in a balancing of these mandatory factors and discretionary aggravating and mitigating circumstances.

[14] In this case, the trial court found the following uncontested aggravating circumstances: 1) Hildebrandt's prior criminal history, which consisted of convictions for trespass, as a Class A misdemeanor, public intoxication, as a Class B misdemeanor, resisting law enforcement, as a Class A misdemeanor, and conversion, a Class A misdemeanor; 2) Hildebrandt is expected to commit other crimes in the future; 3) Hildebrandt was contemptuous of the court with regard to the community work program he was placed in while this case was pending; 4) Hildebrandt's history of substance abuse; 5) the troubling nature and circumstances of the crime other than the seriousness of the offenses themselves; 6) Hildebrandt committed two separate crimes on two separate occasions; and 7) Hildebrandt's profound lack of character because of his disregard for his own family and the interests of the victims in this case. Appellant's App. pp. 85–88. These aggravating circumstances obviously applied to each of Hildebrandt's convictions. The trial court did not find any mitigating circumstances for either conviction.

Hildebrandt contends that the facts of his case are similar to the facts in *Walker v. State*, 747 N.E.2d 536 (Ind.2001). In *Walker*, the defendant was convicted of two counts of child molestation for performing oral sex on a six-year-old boy and sentenced to forty years on each count to be served consecutively. *Id.* at 537. The trial court found several aggravating factors, including that the defendant committed the crime while on probation, and that he fled the jurisdiction. *Id.* at 538. However, the trial court found no history of

criminal behavior. *Id.* Our supreme court determined that the defendant's aggregate eighty-year sentence was manifestly unreasonable because the two separate counts of child molestation were identical, involved the same child, and there was no physical injury. *Id.* Also, the court found that "this is some distance from being the worst offense or the most culpable offender." *Id.* The court revised the sentences to run concurrently. *Id.*

Unlike the facts in *Walker*, Hildebrandt committed two separate crimes with two separate victims. He also has a criminal history and while those prior crimes are non-violent, relatively minor, and unrelated to the present offenses, three of his four misdemeanor convictions were committed in 1999 and 2000, just prior to the commission of the offenses in this case. In addition, a significant period of time elapsed between the commission of the two offenses, despite Hildebrandt's opportunity in the interim to reflect on his wrongful conduct after the first offense. Hildebrandt's convictions were also for sexual intercourse with two young fourteen-year-old girls, both of whom testified that they had not had sexual intercourse prior to their encounters with Hildebrandt, and that they had each informed Hildebrandt of that fact. "Crimes against children are particularly contemptible." *Walker*, 747 N.E.2d at 538.

Hildebrandt's sentence for each of the Class B felony convictions was twelve years executed, just two years more than the presumptive sentence of ten years. Under Indiana's sentencing structure, this means that each of Hildebrandt's nominal twelve-year sentences could be as little as six years of actual time served. In light of the well-documented aggravating circumstances and complete lack of mitigating circumstances in this case, neither of Hildebrandt's two sentences was manifestly unreasonable under Appellate Rule 7(B).

### D. *Concurrent, Consecutive, or Suspended Sentencing*

[15, 16]  Indiana Code section 35–38–1–7.1(b) permits sentences to be imposed consecutively if aggravating circumstances warrant or to be suspended in favor of probation if mitigating circumstances warrant.  Ind.Code § 35–38–1–7.1(b) & (c) (1998).  "The decision to enhance a presumptive sentence or to impose consecutive sentences for multiple offenses is generally within the trial court's discretion." *McCarthy v. State*, 749 N.E.2d 528, 539 (Ind.2001). When the trial court imposes consecutive sentences where not required to do so by statute, this Court will examine the record to insure that the court explained its reasons for selecting the sentence it imposed. *Archer v. State*, 689 N.E.2d 678, 683 (Ind.1997) (citing *Hammons v. State*, 493 N.E.2d 1250, 1254 (Ind. 1986)).

[17–19]  "Sentence enhancement is a separate and discrete decision from the imposition of consecutive sentences." *Cleary v. State*, 638 N.E.2d 431, 434 (Ind. Ct.App.1994), *trans. denied.* However, "statutory provisions regarding sentence enhancement and consecutive sentencing are not mutually exclusive." *Thorne v. State*, 687 N.E.2d 604, 605 (Ind.Ct.App. 1997), *trans. denied.* Further, "a single aggravating circumstance may be used both to enhance a sentence and to impose consecutive sentences." *Allen v. State*, 722 N.E.2d 1246, 1253 (Ind.Ct.App.2000). We hold that appellate review of the process for determining whether to sentence concurrently or consecutively or to suspend in favor of probation must again focus on the character of the offender under Appellate Rule 7(B), as more broadly de-

fined by the *aggregate conduct* of the multiple convictions at issue.

[20] The maximum sentence Hildebrandt could have received for each conviction was twenty years, for a total of forty nominal years in prison if his sentences were executed and to be served consecutively, but in fact net time served of twenty years if served in Class I. On the other hand, had the trial court sentenced Hildebrandt to concurrent sentences for the maximum twenty-year sentence for each conviction, Hildebrandt's time in prison would be approximately ten years if served in Class I. Arguably, this was the best result Hildebrandt could have obtained under the facts and circumstances. The trial court chose to sentence Hildebrandt to a term below the mid-point of this range: consecutive sentences of twelve years executed on each conviction, for a total of twenty-four nominal years, and likely net time served of twelve years, if served in Class I.

As previously noted, Hildebrandt's crimes involved two different victims on two separate occasions more than one week apart. Hildebrandt also had several well-documented and serious aggravating circumstances, and no mitigating circumstances regarding either conviction. Given the maximum possible aggregate sentence for the convictions at issue, the nature of these offenses, and the character of the offender, Hildebrandt's sentence of two consecutive twelve-year terms, for a total of twenty-four nominal years, but likely twelve years served, is not manifestly unreasonable under Appellate Rule 7(B).

## Conclusion

The trial court improperly relied upon the impact suffered by M.L. and K.M. as an aggravating factor, but other, well-documented aggravating factors supported Hildebrandt's enhanced and consecutive sentences, and those sentences were not manifestly unreasonable.

Affirmed.

BARNES, J., and KIRSCH, J., concur.