

IN THE

# Court of Appeals of Indiana

Brent Thomas Wills,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*



FILED

Oct 10 2025, 8:34 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

---

October 10, 2025

Court of Appeals Case No.
24A-CR-1453

Appeal from the Tippecanoe Superior Court

The Honorable Steven P. Meyer, Judge

Trial Court Cause No.
79D02-2310-F4-56

---

**Opinion by Judge Pyle**
Judge Kenworthy concurs.
Senior Judge Baker dissents with separate opinion.

**Pyle, Judge.**

## Statement of the Case[1]

Brent Wills ("Wills") pled guilty to two counts of operating while intoxicated causing death as Level 4 felonies and one count of operating while intoxicated causing serious bodily injury as a Level 5 felony. The trial court sentenced him to an aggregate term of twenty-eight years. Wills now appeals, arguing that (1) the trial court abused its discretion in sentencing him; and (2) his sentence is inappropriate. Concluding that the trial court did not abuse its discretion and that Wills' sentence is not inappropriate, we affirm the trial court's judgment and sentence imposed.

We affirm.

## Issues

1. Whether the trial court abused its discretion in sentencing Wills.

2. Whether Wills' sentence is inappropriate.

## Facts

On September 18, 2023, Wills and his friend, Evan Witkoske ("Witkoske"), attended a golf outing in Indianapolis, Indiana. They traveled from Lafayette,

---

[1] On September 4, 2025, a panel of this Court traveled to Culver Academies as a part of our Appeals on Wheels program. We thank the parties for their able advocacy and Culver Academies for hosting the oral argument.

which is in Tippecanoe County, and arrived at approximately 9:30 a.m. Before and during the outing, Wills consumed alcoholic beverages. Afterwards, Wills and Witkoske went to Rick's Café Boatyard, a sponsor of the event, where they consumed additional alcoholic beverages. At approximately 7:30 p.m., they decided to return to Lafeyette. A friend offered them the opportunity to stay the night in Indianapolis, but they declined the offer. Wills left Indianapolis driving a Jeep Grand Cherokee with a Purdue University - Fort Wayne license plate. Arriving in Tippecanoe County, they stopped at a bar, consumed additional alcoholic beverages, and Wills and Witkoske continued their trip home.

[4] Sometime later, Ed Ward ("Ward"), Chief of the Wabash Township Fire Department, was driving south, with his son, on Klondike Road approaching a roundabout at Lindburgh Road. Ward observed a Jeep with a Purdue license plate travel straight through the roundabout at approximately 60 miles per hour ("mph").

[5] Sometime near 9:30 p.m., Wills was driving north on County Road 400 West. The posted speed limit was 35 mph. At the same time, Kimberly Burge ("Kimberly") was driving west on U.S. Highway 52 in a Pontiac G2 sedan approaching 400 West. She was traveling with her son, Rylan Burge ("Rylan"), and his friend, Jaden Harvey ("Jaden"). When Wills reached U.S. Highway 52, he disregarded the stop sign and struck Kimberly's vehicle. Wills was traveling approximately 62 mph. The force of the crash spun Kimberly's car into an embankment before her car came to rest. Will's Jeep spun in a

counterclockwise direction, collided with another stop sign, and flipped onto its passenger side before coming to rest.

[6] The damage to both vehicles was extensive. Kimberly and Jaden suffered extensive blunt force trauma and were pronounced dead at the scene. Rylan suffered severe injuries and was flown by helicopter to an Indianapolis hospital for treatment. Wills was also taken to a hospital to treat his injuries. Subsequent blood testing done on Wills' blood revealed the presence of cannabinoids and that his alcohol concentration equivalent ("ACE") was .248 grams per 100 milliliters of blood.

[7] On October 10, 2023, Wills was charged with the following offenses related to Kimberly's death: Count I, Operating a Vehicle While Intoxicated Causing Death as a Level 4 Felony;[2] Count II, Operating a Vehicle with an ACE of .08 or more Causing Death as a Level 4 Felony;[3] and Count III, Reckless Homicide as a Level 5 Felony.[4] For Jaden's death, Wills was charged with the following offenses: Count IV, Operating While Intoxicated Causing Death as a Level 4 Felony;[5] Count V, Operating a Vehicle with an ACE of .08 or More Causing Death as a Level 4 Felony;[6] and Count VI, Reckless Homicide as a Level 5

---

[2] IND. CODE § 9-30-5-5(a)(3).

[3] I.C. § 9-30-5-5(a)(1).

[4] IND. CODE § 35-42-1-5.

[5] I.C. § 9-30-5-5(a)(3).

[6] I.C. § 9-30-5-5(a)(1).

Felony.[7]  For the injuries to Rylan, Wills was charged with the following offenses:  Count VII, Operating a Vehicle While Intoxicated Causing Serious Bodily Injury as a Level 5 Felony;[8] and Count VIII, Operating a Vehicle With an ACE of .08 or More Causing Serious Bodily Injury as a Level 5 felony.[9]  On October 12, 2023, Wills was arrested and posted bond.

[8]  In the aftermath of the crash, Rylan underwent surgery for his numerous injuries.  The crash had fractured Rylan's spine and clavicle, lacerated his kidney and his spleen, injured his carotid artery, caused hemorrhaging in his brain, and caused respiratory failure.

[9]  One year later, on May 20, 2024, Wills agreed to plead guilty as charged and was taken into custody pending the sentencing hearing.  Prior to the sentencing hearing, the State filed victim impact statements, crash investigation reports, medical records, and a sentencing memorandum.  Wills' counsel filed letters from Wills' addiction counselor, an attendance record from Alcoholics Anonymous ("A.A."), a letter from Wills' A.A. sponsor, and numerous letters of support from friends, family, and coworkers.

---

[7] I.C. § 35-42-1-5.  At Wills' sentencing hearing, Count VII was amended to correctly label it as a Level 5 Felony.  In addition, during his guilty plea hearing, Wills had been erroneously advised that the potential penalty for Count VII were those related to a Level 4 Felony.  Without objection, the trial court properly advised Wills of the penalty for Level 5 felonies.

[8] I.C. § 9-30-5-4(a)(3).

[9] I.C. § 9-30-5-4(a)(1).

[10] Wills' sentencing hearing was held on June 10, 2024. The evidence revealed that this crash had occurred on Rylan's birthday. Brandon Fultz ("Fultz"), Rylan's brother, testified and highlighted the irony that September 18, 2023 would now be the anniversary of Rylan's mother's and best friend's deaths. Fultz recounted being in the hospital room when Rylan's breathing tube had been removed and seeing the look of confusion in Rylan's eyes. He told the trial court how painful it had been to tell Rylan he had been in a horrible crash and that Jaden was dead. Fultz stated that Rylan "cried out no, not [Jaden] . . . ." (Tr. Vol. 2 at 74). Then, Fultz recounted that he watched "the life entirely leave his eyes and soul like it was ripped from his chest" when he told Rylan that his mom had been driving and had been killed. (Tr. Vol. 2 at 74). Fultz told the trial court that Rylan had endured months in a neck brace and had "not be[en] able to use his arm," had gone to numerous doctor visits and scans, had to learn to walk again, and has to live with "a permanent stiff neck with major loss of range of motion . . . ." (Tr. Vol. 2 at 74). He described Rylan's head injury as being so severe that he was considered "medically decapitated." (Tr. Vol. 2 at 73). The State later clarified that "medical decapitation" meant that "the only thing holding his head to his body after the crash was his spinal cord." (Tr. Vol. 2 at 94).

[11] Clayton Fultz ("Clayton"), Rylan's father, stated that Rylan was or had been "beyond lucky to be alive" because only three percent of people suffering these injuries survive. (Tr. Vol. 2 at 53). He testified that there were no words to describe the pain and emotional distress that he had been enduring since Rylan

had been injured and Kimberly and Jaden had been killed. He further testified that he had nightmares and took medication for the depression he had been experiencing.

[12] Joyce Anderson ("Anderson"), Kimberly's mother, stated that she will never forget the words of the three state troopers who had come to her door at 2:00 a.m. to tell her that her daughter was dead. Anderson told the trial court that the injuries to Kimberly were so severe that she was only able to view her daughter's hand at the funeral home. Anderson stated that she would "never be the same person" and "ha[d] lost interest in doing things that [she] used to love[.]" (Tr. Vol. 2 at 57). Anderson further testified that Kimberly is the last thing she thinks of before she goes to bed and the first thing she thinks of when she gets up in the morning. As a result, Anderson testified, "I don't know how to live without her." (Tr. Vol. 2 at 57).

[13] Dave Harvey ("Harvey"), Jaden's grandfather, testified that Jaden was seventeen years old and in his senior year of high school when he had been killed, just eleven days before his eighteenth birthday. Harvey stated, "His sudden death was the most shocking and sad[dest]experience of [his] life." (Tr. Vol. 2 at 58). He recounted how the funeral director informed the family that Jaden's injuries were so severe that "there was only so much they could do." (Tr. Vol. 2 at 58). Harvey testified, "We took turns whispering to him, telling him we loved and missed him a countless number of times as we knew our last moments with him were coming to a close." (Tr. Vol. 2 at 58). Kris Harvey

("Kris"), Jaden's great aunt, recounted the pain of watching Jaden's father having to close the casket for the funeral of his only son.

[14] Concerning Wills, the Presentence Investigation Report ("PSI") revealed that, at the time of the crash, Wills had been employed as the general manager and director of golf at Coyote Crossing Golf Club ("Coyote Crossing"). He had worked at Coyote Crossing for approximately seven years and had earned approximately $10,000 per month. He lost that job after being charged in this case and was subsequently employed at Arni's Restaurant prior to the sentencing hearing. Wills has been married for approximately eighteen years and has two children. He attended Purdue University from 1997 to 2000, but he did not graduate.

[15] Wills reported that he had first consumed alcohol at the age of fifteen. Over the course of his life, the frequency of alcohol consumption proceeded as follows: "[f]our (4) beers/drinks per month between the ages of 15 and 18[;]" "[s]ix (6) beers/drinks per week between the ages of 19 and 23[;]" "[t]hree (3) beers per week between the ages of 24 and 37[;]" "[t]wo beers/drinks per day between the ages of 38 and 40[;]" and "[f]our (4) drinks per day between the ages of 41 and 44." (App. Vol. 2 at 128) (internal quotation marks omitted). Wills also acknowledged that he had used marijuana for the first time at the age of fifteen. Between the ages of 31 and 44, he admitted using marijuana two to three times per week. However, he claimed that neither drugs nor alcohol had proved to be problematic in his life "'until this accident.'" (App. Vol. 2 at 128).

[16]     Concerning Wills' prior criminal history, there were no juvenile adjudications reported in the PSI. However, Wills had been arrested and charged with Operating While Intoxicated in 2001 in Tippecanoe County. He had been stopped by police in the driveway of his home, passed a field sobriety test, and had a blood alcohol level of .08 grams. But, the case had been dismissed "for lack of probable cause[.]" (Ex. Vol. 3 at 55).

[17]     The PSI shows that, upon posting bond, Wills began working with Theresa Slayton ("Counselor Slayton"), who is a certified clinical social worker and addiction counselor. She reported that between September 29, 2023 and April 25, 2024, Wills had attended twenty-three individual therapy sessions. Counselor Slayton reported that Wills had acknowledged that his "alcohol use and tolerance" had "cost him his ability to judge his level of impairment due to high tolerance." (Ex. Vol. 3 at 55). She also reported that Wills had been working through unresolved grief involving the death of a close friend who had died while Wills was performing CPR on him. Additionally, she noted that Wills had been attending A.A. and had been working through the Twelve Step Program. Nathan Brown ("Brown"), Wills' A.A. sponsor, also submitted a letter confirming to the trial court Wills' participation in A.A. Brown noted that Wills had "acknowledged his poor judgement that [had] caused the tragic loss of life, that it was wrong and inexcusable, and that he [felt] extreme remorse for the decisions he [had] made on September 18, 2023." (Ex. at 58).

[18]     At the conclusion of the sentencing hearing, Wills provided a statement in allocution to the trial court. Wills testified, "Although it was not my intention[]

that day, my senseless and inexcusable selfish behavior tragically ended the lives of [Jaden] Harvey, Kimberly Burge, and seriously injured Rylan Burge and devastated their families." (Tr. Vol. 2 at 80). Wills apologized to the families, the court, and the citizens of Indiana for the harm that he had caused. He thanked the first responders for saving Rylan's life. Wills pledged to continue living a sober life and, upon his release, to become a "productive member of our local community[.]" (Tr. Vol. 2 at 82).

[19] At the conclusion of the evidence, Wills' counsel argued that when considering Wills' sentence, the trial court should consider the following mitigating circumstances: (1) Wills' expression of sincere remorse; (2) the absence of any prior criminal convictions; (3) his cooperation with authorities; (4) the fact that long-term incarceration would impose a hardship on his family; (5) it is unlikely that this crime would occur again; and (6) Wills would respond affirmatively to probation or short-term incarceration. Wills' counsel asked the trial court to impose a ten-year sentence, with seven years executed in the Department of Correction and the balance served on probation.

[20] In response, the State reminded the trial court that, in preparing the PSI, the probation department had recommended that the maximum executed sentence of thirty years be imposed. The State argued that this was not an accident but a result of repeat behavior demonstrated by Wills' 2001 arrest for operating while intoxicated. The State urged the trial court to consider the following aggravating circumstances: (1) the nature and circumstances of this case; (2) that the harm suffered by the victims was "greater than the elements necessary

to prove the commission of the crime[;]" and (3) a lesser sentence would depreciate the seriousness of this crime. ( Tr. Vol. 2 at 94). The State concluded by asking the trial court to impose the maximum executed sentence of thirty years.

[21] Before imposing Wills' sentence, the trial court noted that this was one of the most difficult sentencing decisions it had had to make. The trial court thanked the attorneys for submitting the large volume of information for its consideration. The trial court stated that it had read the letters from the many family members, friends, and people from the community expressing support for the victims and Wills. In addition, the trial court specifically stated as follows:

> But the most heartbreaking letters were from family and friends of Kimberly Burge, [Jaden] Harvey and Rylan Burge. Those letters tell the story of the lives of these wonderful, caring and beautiful people, and their hurt, pain and devastation that these families and friends have experienced as the result of the inexcusable actions of the Defendant. In fact, I had to read those letters in increments and put them down at times to just reflect on the enormous amount of suffering and harm that the survivors of this horrible crime have endured. Heartbreaking too, were the letters submitted in support of the Defendant. By most accounts he is a loving husband, devoted father, and trusted employee. The actions he took during the day and evening of September 18, 2023, will forever change the lives of his wife, his two daughters and his extended family and friends.

(Tr. Vol. 2 at 98).

[22] The trial court then explained that the victims were completely innocent people out "celebrating a teenager's birthday." (Tr. Vol. 2 at 99). It noted that this case was not an accident because Wills had had options that he chose not to pursue. For example, the trial court highlighted that Wills could have chosen not to drink, he could have accepted the invitation to stay in Indianapolis, he could have called an Uber or other ride service, he could have stopped at a hotel, or he could have obeyed the speed limit and other traffic laws. The trial court stated, "Sadly, [Wills] chose none of those options." (Tr. Vol. 2 at 99).

[23] The trial court further stated that these "circumstances alone" justified imposing the maximum sentence for each count. (Tr. Vol. 2 at 99). However, it recognized that Indiana law required the consideration of mitigating factors before imposing a sentence. As a result, the trial court acknowledged that Wills had no "significant criminal history" and that long-term imprisonment would impose a hardship on his dependents. (Tr. Vol. 2 at 100). Further, the trial court found as a mitigating factor the fact that Wills had pleaded guilty as charged without the benefit of a plea agreement. In addition, Wills had shown sincere remorse for his actions as demonstrated by his participation in counseling and cooperation with the attorneys who had filed the civil cases on behalf of the victims' estates. The trial court also noted that Wills had a history of regular employment, had strong support from his family and friends, and participated in counseling while on bond.

[24] Yet, despite these mitigating factors, the trial court stated that this crime required incarceration in the Department of Correction "so as not to depreciate

the seriousness of these offense[s] and the tragic [e]ffect that they've had on the survivors and their communities." (Tr. Vol. 2 at 100). To that end, the trial court identified the following aggravating circumstances: (1) the nature and circumstances of the case; (2) the harm, injury, loss, and damage suffered by the victims of the offenses were significant and greater than the elements necessary to prove the commission of the offenses; (3) some history of criminal behavior; and (4) imposition of a reduced sentence would depreciate the seriousness of the crime.

[25] Specifically addressing the nature and circumstances of the case, the trial court described the particular nature of the case as follows:

> . . . [Wills] drove impaired from Indianapolis, stopped at the bar, continued drinking here. His blood alcohol was three times the legal limit. He tested positive for cannabis. And just the overall irresponsibility he showed throughout the day. There were three victims killed or seriously hurt from this. The harm, injury, loss and damage suffered by the victim of the offense was significant and greater than the elements necessary. And I say that because I think at the very least it's fair for the Court to consider that the only survivor of this, Rylan, suffered both the loss of his mother and his best friend. Court also considers the extended [e]ffect, the emotional toll that this has had on the families. I can tell from the letters and the testimony here they continue to grieve and will grieve for some time. And I think it's fair to say because of the circumstances. The lives were taken and the people were injured under these circumstances which were not expected and they were swiftly taken away without any opportunity for these families to have talked to their loved ones or be prepared for this drastic kind of event. But at the very least, I think it's fair to consider the impact that it has had on Rylan.

(Tr. Vol. 2 at 101).

[26] Finding that the aggravating circumstances justified an enhanced sentence, the trial court then imposed Wills' sentence. For Count I, Operating While Intoxicated Causing Death as a Level 4 Felony, the trial court imposed a sentence of eleven (11) years. The trial court merged Counts II and III into Count I. For Count IV, Operating While Intoxicated Causing Death as a Level 4 Felony, the trial court imposed a sentence of eleven (11) years. The trial court merged Counts V and VI into Count IV. For Count VII, Operating While Intoxicated Causing Serious Bodily Injury as a Level 5 Felony, the trial court imposed a sentence of six (6) years. The trial court merged Count VIII into Count VII. The trial court ordered Counts I, IV, and VII to be served consecutively for an aggregate sentence of twenty-eight (28) years. Of those years, the trial court ordered twenty-four (24) years to be executed in the Department of Correction. Of the remaining four (4) years, the trial court ordered two (2) years to be served through Tippecanoe County Community Corrections and the remaining two (2) years to be served on probation.

[27] Wills now appeals his sentence.

## Decision

[28] Wills argues that: (1) the trial court abused its discretion in imposing his sentence; and (2) his sentence is inappropriate. We address each contention in turn.

## 1. Sentencing Discretion

[29] Sentencing decisions rest within the sound discretion of the trial court. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g,* 875 N.E.2d 218 (Ind. 2007). So long as the sentence is within the statutory range, it is subject to review only for an abuse of discretion. *Id.* An abuse of discretion will be found where the decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* A trial court may abuse its discretion in several ways, including: (1) failing to enter a sentencing statement at all; (2) entering a sentencing statement that includes aggravating and mitigating factors that are unsupported by the record; (3) entering a sentencing statement that omits reasons that are clearly supported by the record; or (4) entering a sentencing statement that includes reasons that are improper as a matter of law. *Id.* at 490-91. "When an abuse of discretion occurs, this Court will remand for resentencing only if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Ackerman v. State*, 51 N.E.3d 171, 194 (Ind. 2016) (internal quotation marks and citation omitted), *cert. denied*.

[30] Our General Assembly has established a statutory minimum and maximum range for felonies with an advisory sentence set in the middle of that range. *Gomillia v. State*, 13 N.E.3d 846, 852 (Ind. 2014). To determine a particular defendant's sentence, trial courts may consider mitigating and aggravating circumstances from a non-exhaustive list provided under INDIANA CODE § 35-

38-1-7.1. *Id*. at 849. After considering mitigating and aggravating circumstances, a trial court may impose any sentence within the statutory range. *Id.* (holding that trial courts may impose any sentence authorized by statute and Indiana's Constitution, "regardless of the presence or absence of aggravating circumstances or mitigating circumstances").

## A. Mitigators

The determination of mitigating circumstances lies within the trial court's discretion. *Spears v. State*, 735 N.E.2d 1161, 1167 (Ind. 2000), *reh'g denied*. A trial court is *not* obligated to accept a defendant's claim as to what constitutes a mitigating circumstance. *Rascoe v. State*, 736 N.E.2d 246, 249 (Ind. 2000). In fact, a claim that the trial court failed to find a mitigating circumstance requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. *Anglemyer*, 868 N.E.2d at 493.

Wills argues that the trial court failed to consider the fact that he expressed "genuine remorse." (Willis' Br. 12). He specifically claims that he "expressed genuine remorse and was steadfast in his desire to provide restitution and cooperate in the victims' efforts at civil recovery." (Wills' Br. 12). Concerning Wills' restitution mitigator, the State argues that the trial court specifically acknowledged his cooperation and willingness to make restitution. The trial court simply considered that as part of his expression of remorse, which it acknowledged as a mitigator. The State further argues that the trial court's statement at the sentencing hearing shows that the trial court considered the mitigators advanced by Wills but chose not to accept all of them because of the

seriousness of the crime. The State further argues that the trial court "determined that [Wills'] excessive irresponsibility and disregard for others by driving so heavily intoxicated, speeding, and ignoring a stop sign merited a sentence above the advisory sentence." (State's Br. 11).

[33] In this case, the record reveals that the trial court considered the mitigators advanced by Wills' counsel. The trial court specifically recognized that Wills showed sincere remorse, had no significant criminal history, cooperated with the victim's civil attorneys, and that long-term imprisonment would impose a hardship on his dependents. In addition, the trial court recognized that Wills had a history of regular employment, strong family support, and had participated in counseling immediately after the offense was committed. It was not obligated to consider the mitigators in the same manner as Wills had argued at the sentencing hearing. The evidence before the trial court supported its decision to place greater emphasis on the aggravators advanced for consideration at the sentencing hearing. As a result, we find no error here.

## B. Aggravators

[34] Trial courts have discretion in identifying aggravating circumstances when deciding whether to impose enhanced or consecutive sentences. *Gomillia*, 13 N.E.3d at 849. Regarding the nature and circumstances aggravator, our Indiana Supreme Court has provided the following holding:

> The "nature and circumstances" of a crime is a proper aggravator. While a trial court may not use a factor constituting a material element of an offense as an aggravating

circumstance, a court may look to the particularized circumstances of the criminal act[.] Although the particular manner in which a crime is committed may constitute an aggravating factor, a trial court should specify why a defendant deserves an enhanced sentence under the particular circumstances[.]

*Bond v. State*, 729 N.E.2d 1002, 1005 (Ind. 2000) (citations omitted), *reh'g denied*.

[35] Wills argues that the trial court imposed an enhanced sentence based on several improperly applied aggravating circumstances. He specifically argues that the aggravators were "not proper because every operating a vehicle while intoxicated resulting in death case involves death and hardship to the victim's family, and every operating a vehicle while intoxicated resulting in serious bodily injury case involves serious injury to the victim." (Wills' Br. 11). The State argues that the trial court properly considered the harm and effect of this crime on Rylan and the victims' family members because the harm was particularly destructive, that is, not normally associated with this type of crime and was foreseeable to Wills.

Of particular note is the trial court's reliance on the nature and circumstances of this case as an aggravator. It is well settled that "a single aggravating circumstance may be used both to enhance a sentence and to impose consecutive sentences." *Hildebrandt v. State*, 770 N.E.2d 355, 364 (Ind. Ct. App. 2002) (internal citation omitted), *trans. denied*. As a result, if we hold that the

trial court properly relied upon this aggravator, we need not review Wills' other allegations of sentencing error regarding aggravators.

[36]    Our recent decision in *Howard v. State,* 266 N.E.3d 304 (Ind. Ct. App. 2025) is instructive in how a trial court may use the particular circumstances of a crime to justify the enhancement of a defendant's sentence. In that case, Howard was a twenty-two-year-old recent graduate of Indiana University who had attended a tailgate party prior to a football game. Later that evening, she attended a birthday party at a local bar which provided bottle service. Howard consumed a significant amount of alcohol before leaving the bar. While driving in a state of intoxication, Howard struck Nathaniel Stratton ("Stratton"), who was riding a scooter in a bike lane.

> The impact between Howard's car and Stratton knocked Stratton's shoe off his foot, shattered Howard's passenger-side windshield, and threw Stratton's body further north on Walnut Street. As Stratton lay bleeding in the street, Howard drove away dragging Stratton's scooter under her car, which caused sparks to fly from the rear of her car.

*Id.* at 310. Howard continued to drive for several blocks, at times driving partially on the sidewalk, before she stopped and people yelled that she was dragging a scooter under her car. Police soon responded and Howard was taken into custody. A subsequent blood test revealed that Howard had an ACE of .226.

[37]    Howard was charged with multiple felony offenses and pled guilty to Level 3 felony leaving the scene of an accident during or after the commission of the

offense of operating a vehicle while intoxicated causing death. At her sentencing hearing, Howard's counsel argued that the trial court should impose a sentence less than the advisory sentence and that any executed time should be served on community corrections. Acknowledging the horrible crime that had been committed, counsel argued that Howard had performed many good deeds throughout her life and submitted numerous letters attesting to her good character. Howard's counsel proposed that the trial court consider a number of mitigators. Howard's counsel further argued that the trial court should not consider the harm or injury to Stratton as aggravators because they were elements of the offense and Howard had not caused a harm greater than death.

[38] The State argued that the trial court should impose an enhanced sentence based on the nature and circumstances of the case. Specifically, the State argued that Howard's "excessive intoxication, her speed, and the fact that she drove in such a manner in a highly populated area" were facts justifying an enhanced sentence. *Id.* at 317.

[39] After considering the parties' arguments, the trial court identified Howard's manner of driving and her "extreme level of intoxication" as aggravating factors and imposed an enhanced sentence of twelve (12) years with ten (10) years executed in the Indiana Department of Correction. *Id.*

[40] On appeal, Howard argued that the trial court's consideration of her level of intoxication was improper because it was an element of the offense and the manner of her driving was improper because there was no evidence of her speed

at the time of the crash. We disagreed. We noted that "the particularized circumstances of a criminal act may constitute a separate aggravating circumstance." *Id*. at 322. Howard was charged under INDIANA CODE § 9-30-5-5, which required proof of intoxication or a .08 ACE. Nevertheless, we held that the trial court's particularized finding that Howard's ACE of .226 represented an "extreme level of intoxication" went beyond noting the elements of the offense and was properly used as an aggravator. *Id. See also Rodriquez v. State*, 785 N.E.2d 1169, 1178 (Ind. Ct. App. 2003) (holding that, in a case involving a defendant who pleaded guilty to operating a motor vehicle while intoxicated causing death, the trial court properly considered as an aggravating circumstance the particularized fact that the defendant's BAC was nearly three times the legal limit at the time of a traffic accident), *superseded by statute on other grounds*, *trans. denied*; *Robinson v. State*, 775 N.E.2d 316, 321 (Ind. 2002) (holding that shooting murder victim multiple times, stripping, looting, robbing, and then dumping the body in a lake was proper use of nature and circumstance aggravator); *Hulfachor v. State*, 813 N.E.2d 1204, 1209 (Ind. Ct. App. 2004) (holding that "facts evidencing the particular brutality of the attack and severity of the resulting injury may be considered as an aggravating factor"); *Benton v. State*, 691 N.E.2d 459, 465 (Ind. Ct. App. 1998) (although bodily injury is an element of burglary, "the viciousness with which the injury was inflicted" could be considered as an aggravating circumstance to enhance the sentence).

[41] In this case, the trial court found that the nature and circumstances of the offenses were an aggravating factor. Specifically, the trial court noted that: (1)

Wills' ACE was more than three times the legal limit; (2) he tested positive for marijuana; (3) Wills demonstrated irresponsibility by choosing to drive after consuming alcohol all day; and (4) the harm and injury done to the three victims and their families. In addition, the record demonstrates that the trial court considered the testimony that Kimberly and Jaden's bodies were so mangled by the crash that their funerals had to be held with their caskets closed. Further, Rylan suffered injuries severe enough to be described as a medical decapitation. Just as in *Howard*, we hold that the trial court went beyond describing the elements of the offenses and particularly described Wills' extreme irresponsibility and the brutality of the offenses. We also hold that the nature and circumstances aggravator, as used in this case, was sufficient to justify the enhancement of the sentences in each count. As a result, we need not address Wills' other arguments regarding improper aggravators. *See Hildebrandt*, 770 N.E.2d at 364 (holding that a single aggravating factor may be used to enhance a defendant's sentence).

## 2. Inappropriate Sentence

[42] Wills argues that his sentence is inappropriate under Indiana Appellate Rule 7(b). We may revise a sentence if it is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). The defendant has the burden of persuading us that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). The principal role of an Appellate Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those

charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). In other words, there must be "'compelling evidence portraying in a positive light the nature of the offense' and 'the defendant's character.'" *Norton v. State*, 235 N.E.3d 1285, 1291 (Ind. Ct. App. 2024) (quoting *Lane v. State*, 232 N.E.3d 119, 122 (Ind. 2024)). Whether we regard a sentence as inappropriate turns on the "culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Id.* at 1224. "Appellate Rule 7(B) analysis is not to determine whether another sentence is more appropriate but rather whether the sentence imposed is inappropriate." *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012) (cleaned up), *reh'g denied*.

[43] When determining whether a sentence is inappropriate, we acknowledge that the advisory sentence "is the starting point the Legislature has selected as an appropriate sentence for the crime committed." *Childress*, 848 N.E.2d at 1081. Wills pled guilty to and was convicted of two counts of Level 4 felony operating while intoxicated causing death. A person who commits a Level 4 felony "shall be imprisoned for a fixed term of between two (2) and twelve (12) years, with the advisory sentence being six (6) years." I.C. § 35-50-2-5.5. Wills also pled guilty to and was convicted of one count of Level 5 felony operating while intoxicated causing serious bodily injury. A person who commits a Level 5 felony "shall be imprisoned for a fixed term of between one (1) and six (6) years, with the advisory sentence being three (3) years." I.C. § 35-50-2-

6(b). Here, the trial court imposed consecutive eleven-year terms for the Level 4 felonies and a consecutive six-year term for the Level 5 felony, resulting in a total aggregate sentence of twenty-eight years.

[44] Turning to the nature of the offense, we examine the "details and circumstances surrounding the offense and the defendants' participation." *Perry v. State*, 78 N.E.3d 1, 13 (Ind. Ct. App. 2017). Here, the horrific facts are not in dispute. Wills spent the day consuming alcohol and marijuana while attending a golf outing in Indianapolis. After turning down an invitation to stay overnight in Indianapolis, he chose to drive home to Lafayette. On his way home, Wills stopped to consume more alcohol, drove through a roundabout, and then disregarded a stop sign before crashing into another car, killing Kimberly and Jaden and medically decapitating Rylan. The damage to Kimberly and Jaden bodies were so severe that their caskets were closed for their funerals.

[45] Concerning Wills' character, there is evidence in the record showing the good deeds Wills has done in his life. The letters introduced at the sentencing hearing provide evidence that he was a devoted husband and father with a lengthy history of employment. However, the PSI also reveals a lengthy and accelerating pattern of substance abuse. While Wills made commendable progress in addressing his substance abuse through counseling while on bond, he claimed, during his PSI interview, that his consumption of alcohol and marijuana did not present a problem "'until this accident.'" (App. Vol. 2 at 128). His explanation and description of this offense as an "accident" suggest a failure to understand the depth of his substance abuse issues and the nature of

this offense. As a result, we are not persuaded that compelling evidence exists justifying a revision of Wills' sentence, and we hold that Wills' sentence is not inappropriate.

[46] Affirmed.

Kenworthy, J., concurs.
Baker, Sr.J., dissents with separate opinion.

ATTORNEYS FOR APPELLANT

James H. Voyles
Tyler D. Helmond
Voyles Vaiana Lukemeyer Baldwin & Webb
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

John R. Oosterhoff
Deputy Attorney General
Indianapolis, Indiana

**Baker, Senior Judge, dissenting.**

## I. Introduction

[47] This case presents tragic circumstances, and the trial judge was faced with difficult sentencing decisions. And our standard of review is "highly deferential[,]" with sentencing "normally left to the sound discretion of the trial court." *Hardebeck v. State*, 656 N.E.2d 486, 490 (Ind. Ct. App. 1995), *trans. denied*. But, as to Wills' sentences for the two counts of Level 4 felony operating while intoxicated causing death, I conclude the trial court abused its sentencing discretion. I further conclude Wills has shown his sentence is inappropriate under Appellate Rule 7(B). Consequently, I respectfully dissent and would direct the trial court to impose a reduced sentence.

## II. Sentencing Discretion

[48] The trial court listed four aggravating sentencing factors: (1) a history of criminal behavior; (2) imposition of a reduced sentence would depreciate the seriousness of the crime; (3) the harm, injury, loss, and damage suffered by the victim of the offense was significant and greater than the elements necessary to commit the offense; and (4) the nature and circumstances of the offenses, beyond what is necessary to prove the elements of the offense. Tr. Vol. 2, pp. 100-02. Starting with the criminal behavior aggravating factor, the State conceded at oral argument that the trial court should not have considered Wills'

previous arrest and charge for operating while intoxicated, which was dismissed.[10]

[49] As for the aggravating factor that a reduced sentence would depreciate the seriousness of the offense, there is no indication in the transcript that the trial court considered a sentence below the advisory for any of the three charges. To the contrary, it appears to me that the trial court started with the maximum sentence for each count and worked from there. It is often said that where you start from often determines where you end. For Wills' part, he requested the advisory sentence for each offense. For these reasons, the court's identification of this aggravating factor was inappropriate. *See Powell v. State*, 751 N.E.2d 311, 317 (Ind. Ct. App. 2001) (rejecting trial court's selection of depreciation of seriousness of offense as aggravating factor; trial court did not consider imposing less than presumptive sentence and did not state that imposition of less than an enhanced term would depreciate the seriousness of the offense).

[50] Turning to the aggravating factor of harm to the victims being greater than what was necessary to prove the elements of the offense, I cannot dispute that it applies to Rylan Burge under Count VII. He has suffered physical injuries that will affect him for the rest of his life, as well as the emotional harm from losing his mother and best friend in the same accident. But I disagree that this aggravating factor applies to Count I (the death of Kimberly Burge) and Count

---

[10] See Oral Argument at 29:13, https://events.in.gov/event/appeals-brent-t-willis-v-state-of-indiana-24a-cr-1453 [https://perma.cc/45VD-GUJ9] (last visited October 2, 2025).

IV (the death of Jaden Harvey). By all accounts, they died either instantly or very shortly after the collision. And although Kimberly and Jaden's families suffered extensive emotional harm from their deaths, "under normal circumstances the impact upon family is not an aggravating circumstance for purposes of sentencing." *Bacher v. State*, 686 N.E.2d 791, 801 (Ind. 1997).

[51] That leaves us with the fourth aggravating circumstance, the nature and circumstances of the offenses beyond what was necessary to prove the elements of the offenses. I agree with the majority that this aggravating circumstance was appropriate as to all three offenses. Wills' level of intoxication was well above the legal limit after a day of drinking, there were cannabinoids in his system, and he was speeding when he struck the victims' car.

[52] In summary, with respect to Counts I and IV, I conclude there is one valid aggravating circumstance versus seven mitigating circumstances: (1) his guilty plea and acceptance of responsibility; (2) his statement of remorse; (3) his lack of a formal criminal history; (4) hardship to Wills' dependents because he was the sole breadwinner; (5) his attempts at rehabilitation while the case was pending; (6) a history of regular employment; and (7) strong support from family and friends. Tr. Vol. 2, p. 102.

[53] I fully accept our Court's longstanding precedent stating: (1) we do not second-guess the trial court's weighing of aggravating and mitigating factors; and (2) one valid aggravating factor is sufficient to uphold a sentence above the advisory amount set by statute. *See Robinson v. State*, 894 N.E.2d 1038, 1042

(Ind. Ct. App. 2008) (a trial court cannot be said to have abused its discretion in failing to properly weigh aggravating and mitigating factors); *Guzman v. State*, 985 N.E.2d 1125, 1133 (Ind. Ct. App. 2013) ("a single aggravating factor is sufficient to warrant an enhanced sentence"). "Sentencing is fact-sensitive[.]" *Bluck v. State*, 716 N.E.2d 507, 515 (Ind. Ct. App. 1999). But allowing the sentence here to stand as to Counts I and IV, with such a lopsided count of aggravating and mitigating factors, effectively renders trial court sentencing decisions unreviewable under an abuse of discretion standard. I conclude that the court abused its sentencing discretion as to Counts I and IV, but rather than remanding the case for a new sentencing hearing, I would impose relief as set forth below.

## III. Rule 7(B) Sentencing Review

[54] I do not disagree with the majority's statement of our standards and procedures under Appellate Rule 7(B), but I think the sentences for Counts I and IV are rare outliers in need of correction. As to the nature of the offenses, Wills chose to heavily drink all day and consume cannabinoids before driving home, and he was speeding at the time he ran into Kimberly Burge's car, killing her and Jaden Harvey. But they died on impact or soon after, and there is no evidence that they suffered. On the other hand, Rylan Burge suffered life-threatening injuries that will affect the rest of his life, as well as serious emotional harm from losing his mother and best friend.

[55] Turning to the character of the offender, Wills pleaded guilty without an agreement. "A guilty plea demonstrates a defendant's acceptance of

responsibility for the crime and at least partially confirms the mitigating evidence regarding his character." *Cotto v. State*, 829 N.E.2d 520, 525 (Ind. 2005). Although the evidence against Wills was strong, his guilty plea saved time and expense and avoided the hardship of putting Rylan Burge and the victims' other family members through a trial, as the trial court noted. In addition, during sentencing Wills expressed remorse for his crimes and took responsibility. The trial court determined Wills' remorse was genuine.

[56] Wills has no formal criminal history, although I acknowledge that his lack of arrests or convictions is tempered by his admission that he has often smoked marijuana throughout his adult life. Even so, Wills has also consistently worked his entire adult life. He lost his job after this case began, but he obtained a new one and continued to work while the case was pending.

[57] "Sentencing decisions often defy quantification[,]" and "principled appellate review and revision of sentences [is] difficult." *Bluck*, 716 N.E.2d at 515. I conclude the sentences for Wills' two convictions of Level 4 felony operating while intoxicated resulting in death are inappropriate in light of the nature of the offenses and his character. I would direct the trial court to reduce his sentences for each count to the advisory sentence of six years, to be served consecutively to each other and to his six-year sentence for operating while intoxicated causing bodily injury, for a total sentence of eighteen years.[11] I

---

[11] I would have reduced his sentences for each Level 4 felony to five years each, but Wills did not request a sentence below the advisory amount.

would further suspend four years of the sentence, with two years served on community corrections and two years served on probation, as ordered by the trial court.

[58] Reviewing a sentence under 7(B) requires deference to the trial court's decision, but it also "'boils down to our collective sense of what is appropriate.'" *Faith v. State*, 131 N.E.3d 158, 160 (Ind. 2019) (quoting *Taylor v. State*, 86 N.E.3d 157, 165 (Ind. 2017)). My sense of the inappropriateness of Wills' sentence differs from that of my colleagues, and I respectfully dissent.